Sandra TOWERS, on her own behalf and on behalf of others similarly situated, and Robert Sturdivant, Plaintiffs–Appellants,

*v.*

CITY OF CHICAGO, Defendant–Appellee.

No. 97–3775.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 28, 1998.

Decided April 16, 1999.

Thomas Peters (argued), Murphy, Peters & Davis, Mariel Nanasi, Chicago, IL, for Plaintiffs–Appellants.

Diane Larsen, Lawrence Rosenthal (argued), Office of the Corporation Counsel, Appeals Division, Chicago, IL, for Defendant–Appellee.

Before COFFEY, RIPPLE and EVANS, Circuit Judges.

RIPPLE, Circuit Judge.

The plaintiffs brought this action against the City of Chicago ("the City") to challenge city ordinances that impose a $500 fine upon the owner of a vehicle in which illegal drugs or firearms are found. The plaintiffs now seek review of the district court's decision to grant the defendant's Rule 12(b)(6) motion to dismiss and to deny the plaintiffs' motions for class certi-

fication and preliminary injunction. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

## I

## BACKGROUND

### A. The Ordinances

The Municipal Code of Chicago provides that the owner of any vehicle containing illegal drugs or unregistered firearms may be assessed an administrative penalty of $500. *See* Chicago Municipal Code §§ 7–24–225 (drugs), 8–20–015 (firearms).[1] The relevant ordinances recognize only three defenses to the imposition of the penalty: 1) the vehicle was stolen at the time the illegal item was found in the vehicle, and the theft was reported within 24 hours after the theft was discovered or reasonably should have been discovered; 2) the vehicle was operating as a common carrier and the violation occurred without the knowledge of the person in control of the vehicle; and 3) the owner proves that the item found is not unlawful.

When the illegal item is found in a vehicle, a police officer must seize the car and have it towed to an impoundment facility to secure payment of the administrative penalty. When the vehicle is towed, the officer must provide notice to anyone identifying himself as the owner, or anyone else in control of the vehicle, that the owner can request a preliminary hearing. If requested, the preliminary hearing must be held within 24 hours of the seizure. All interested persons have an opportunity to be heard at the hearing, and the hearing officer determines whether there is probable cause to believe that the illegal item was found in the vehicle and that none of the three defenses applies.

If the hearing officer concludes that probable cause does not exist, then the City must return the vehicle to the owner without charge. If, however, the officer determines that probable cause does exist, or if the owner does not request a preliminary hearing, then the vehicle must remain impounded pending a final hearing, unless the owner posts a cash bond of $500 plus towing and storage costs. Notice of the time, date, and place of the final hearing must be sent to the owner by certified mail, return receipt requested, within 10 days after seizure, and the final hearing must take place within 30 days after the seizure.

At the final hearing, the hearing officer must determine by a preponderance of the evidence whether the illegal item was found in the vehicle and, if so, whether any of the three defenses applies. If the hearing officer finds that no violation occurred, then the City must return the vehicle (or the cash bond) to the owner. If the hearing officer determines that a violation occurred, then he must find the owner liable for the $500 administrative penalty plus applicable towing and storage charges.

### B. Facts Relating to Plaintiff Towers

On January 27, 1996, Chicago police officers stopped Ray Chambers while he was driving Sandra Towers' car. The police found a controlled substance in the vehicle. Pursuant to § 7–24–255 of the Chicago Municipal Code, the police seized and impounded Ms. Towers' car. Ms. Towers had not given Chambers express permission to use her car, let alone to use it to transport a controlled substance, and she did not know that a controlled substance was in her car. Ms. Towers was not present when the car was seized.

Ms. Towers was never informed by the City of her right to request a preliminary hearing within 24 hours of the seizure and thus did not request such a hearing. Be-

---

1. The plaintiffs' class action claim also challenges three other ordinances that impose on vehicle owners a $500 penalty for other particular misuses of a vehicle. *See* Chicago Municipal Code §§ 8–8–060 (prostitution), 8–16–020 (children on streets at night), 11–4–1115 (sound devices).

tween January 28 and February 6, Ms. Towers attempted to retrieve her car by posting the $500 bond and paying the towing and storage fees, but she was unsuccessful because City employees had not completed the necessary paperwork. Ms. Towers was first notified by mail on February 2, 1996, that she was entitled to a final hearing. On February 6, 1996, Ms. Towers obtained her car by paying the $500 bond and $225 in accumulated towing and storage fees. At the final hearing, Ms. Towers was not permitted to assert an innocent-owner defense because the ordinance does not recognize such a defense. On March 8, 1996, a final administrative order imposing a $500 civil penalty was entered against Ms. Towers.

## C. Facts Relating to Plaintiff Sturdivant

On an unspecified date in September 1996, Chicago police officers witnessed a person in possession of an unregistered handgun run and jump into Robert Sturdivant's car. Pursuant to § 8–20–015 of the Chicago Municipal Code, the police seized and impounded Mr. Sturdivant's car. Mr. Sturdivant was not present at the time of the seizure and did not know that a gun was in his car. He was never notified of his right to request a preliminary hearing and thus did not request one.

On October 1, 1996, Mr. Sturdivant received notice of his right to a final hearing. At the hearing, Mr. Sturdivant was unable to assert an innocent-owner defense because the ordinance recognizes no such defense. Consequently, Mr. Sturdivant did not prevail at the final hearing and was found liable for the $500 administrative penalty. Mr. Sturdivant was without his vehicle for more than fifteen days before he was able to pay to have the car released to him. The interrupted use of his vehicle affected his ability to make a living and his

access to the necessities and amenities of life.

## D. Earlier Proceedings in the State Court and in the District Court

Plaintiff Towers filed this action against the City of Chicago in state court, and the City removed it to federal district court. On January 27, 1997, Ms. Towers filed a second amended complaint, including two additional plaintiffs (Mr. Sturdivant and Kevin Amos) and purporting to represent a class of similarly situated people. The plaintiffs brought federal claims under § 1983 (on their own behalf and on behalf of a putative class of car owners). They alleged that the administrative penalty violated substantive due process and the Excessive Fines Clause; that the procedures specified in the ordinances violated procedural due process; and that the City seized their cars in violation of the Fourth Amendment. Ms. Towers also contended that the City had deprived her of procedural due process by delaying the return of her vehicle after she tendered the required cash bond and fees.

On February 7, 1997, the parties agreed to proceed before a magistrate judge. On September 30, 1997, the magistrate judge, in a comprehensive and thoughtful opinion, granted the City's Rule 12(b)(6) motion to dismiss and denied the plaintiffs' motions for class certification and for preliminary injunction. This appeal followed.[2]

## E. Holding of the District Court

The court dismissed all of the plaintiffs' claims for failure to state a claim upon which relief can be granted.

The district court first dismissed the procedural due process claim; it held that, under the balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the ordinances provide adequate procedural protection for

---

2. Only Ms. Towers and Mr. Sturdivant appeal; Mr. Amos' claims were dismissed pursuant to a settlement agreement.

the owner. The district court determined that, along with other available state law remedies, the post-deprivation procedures under the ordinances satisfy the requirements of procedural due process. Specifically, with respect to the plaintiffs' claim that they did not receive notice of the preliminary hearing, the court held that the police officers' notice to the person in control of the vehicle was adequate.

The district court also dismissed the plaintiffs' substantive due process claims. It held that the ordinances impose constitutionally permissible civil fines. Finding the City's fines analogous to civil in rem forfeitures, the district court relied on *Bennis v. Michigan*, 516 U.S. 442, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996), in which the Supreme Court upheld the constitutionality of a Michigan in rem forfeiture statute that did not recognize an innocent-owner defense.[3]

The district court also dismissed the plaintiffs' Excessive Fines Clause claims. The court determined that the fines imposed were analogous to fines levied in civil in rem forfeiture proceedings and were not excessive under the Eighth Amendment. The district court rejected the plaintiffs' argument that they were completely without culpability and concluded that, because they did not report the cars stolen, the plaintiffs must have given at least some degree of consent to the use of their cars, either before or after the fact. Accordingly, the district court reasoned, the fines were not excessive in light of their purpose of inducing owners to exercise greater care in entrusting their property to others.

Because the plaintiffs' claims failed to survive the Rule 12(b)(6) motion,[4] the district court also held that their proposed class action based on those claims must also fail. The district court further held that, even if the plaintiffs' individual claims had survived dismissal, the requirements for class certification had not been met because there was inadequate evidence of numerosity. The district court did not reach the issue whether the plaintiffs had met the other three threshold requirements for class certification.

Finally, the district court denied the plaintiffs' motion for a preliminary injunction. It held that the plaintiffs lacked standing as individuals to request such relief because they could not demonstrate, as required by *City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), impending injury similar to the one already allegedly suffered. Even if the class had been certified, continued the court, the plaintiffs met none of the three threshold requirements for a preliminary injunction: some likelihood of success on the merits, no adequate remedy at law, and irreparable harm.

## II

## DISCUSSION

### A. Excessive Fines

■ The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The parties have not disputed that the Eighth Amendment's Excessive Fines Clause applies to the civil penal-

3. In the course of its discussion of this issue, the district court rejected the plaintiffs' argument that the City's ordinances are criminal in nature and are thus subject to criminal due process protections. Applying the analysis articulated by the Supreme Court for determining whether a penalty is civil or criminal, *see United States v. Ward*, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980), the district court concluded that the fines imposed under the City's ordinances were civil and thus did not implicate criminal due process protec-

tions. The plaintiffs do not appeal the district court's determination in this regard.

4. The district court also dismissed the plaintiffs' claim that the impoundment of their cars constituted an unreasonable seizure under the Fourth Amendment. In the district court's view, the plaintiffs did not demonstrate that the ordinances, or the police officers' execution of the ordinances, were unreasonable.

ties at issue in this case. Indeed, the Supreme Court has interpreted the Excessive Fines Clause to apply to civil fines. *See Hudson v. United States*, 522 U.S. 93, 118 S.Ct. 488, 495, 139 L.Ed.2d 450 (1997) (stating that "[t]he Eighth Amendment protects against excessive civil fines, including forfeitures"); *Austin v. United States*, 509 U.S. 602, 609, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (concluding that the civil forfeiture of property used in a drug crime constituted punishment and was therefore subject to the Excessive Fines Clause). In *Austin*, the Supreme Court stated that the Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.' " *Id.* at 609–10, 113 S.Ct. 2801 (quoting *Browning–Ferris Indus. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989)). The Court then explained that civil sanctions can constitute punishment, and therefore are subject to the limitations of the Excessive Fines Clause, if they serve, at least in part, retributive or deterrent purposes. *See id.* at 610, 113 S.Ct. 2801. The Court ultimately concluded that the civil forfeiture under 21 U.S.C. § 881(a) of a mobile home and an autobody shop that were used in a drug crime constituted a "payment to a sovereign as punishment for some offense" and was thus subject to the limitations of the Excessive Fines Clause. *Id.* at 622, 113 S.Ct. 2801.

The fines imposed by the City under the ordinances at issue here are not solely remedial. In fact, they appear to serve little or no remedial purpose; they do not compensate the City for any loss sustained as a result of the violations. Rather, it is clear that the fines, at least in part, serve the punitive purpose of deterring owners from allowing their vehicles to be used for prohibited purposes. At oral argument, the City emphasized that the ordinances were enacted in an effort to curb illegal drug and firearm activity by supplementing the criminal laws with a civil deterrent that does not require the government to meet the high burden of proof required for a criminal conviction. Because the fines, at least in part, serve this deterrent purpose, they constitute payment "as punishment for some offense." *Id.* at 610, 113 S.Ct. 2801. Therefore, we must determine whether they violate the Excessive Fines Clause.

The Supreme Court of the United States has adopted a "gross disproportionality" test to determine whether a fine is "excessive" for purposes of the Excessive Fines Clause. *See United States v. Bajakajian*, 524 U.S. 321, 118 S.Ct. 2028, 2036, 141 L.Ed.2d 314 (1998). The Court explained that "[t]he amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish" and held that "a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *Id.* In *Bajakajian*, the defendant pleaded guilty to failing to report that he was transporting more than $10,000 in currency out of the country. The district court found the entire amount of the currency—$357,144—subject to forfeiture under 18 U.S.C. § 982(a)(1). In applying the gross disproportionality standard to the facts of Bajakajian's case, the Supreme Court considered several factors: that the defendant was guilty of only a reporting offense, that the violation was unrelated to any other illegal activities (such as drug dealing, money laundering, or tax evasion), that the maximum criminal sentence would have been six months and the maximum fine $5,000, and that the offense caused only minimal harm. Based on these considerations, the Supreme Court determined that the forfeiture of $357,144 was grossly disproportional to the gravity of Bajakajian's offense. *See id.* at 2038–39.

The plaintiffs submit that the $500 civil penalty imposed on them violates the Excessive Fines Clause because it bears no relationship to their culpability as innocent owners. They contend that, be-

cause they did not know about the illegal items that were found in their vehicles, they are innocent of any wrongdoing and, therefore, the fines imposed are excessive and grossly disproportional to the offense. In evaluating this contention, we note at the outset that the proportionality determination must be made based on the facts of a particular case and that our review of that determination is de novo. *See id.* at 2037–38 & n. 10. We therefore turn to the factors considered by the Supreme Court in *Bajakajian* to determine whether the fine imposed by the City violates the Excessive Fines Clause.

■ We begin by examining the gravity of the offense committed by the plaintiffs. On the record before us, each plaintiff has unwittingly allowed his vehicle to be used as a receptacle for another's illegal item. There is no indication that the plaintiffs' offense was related to any other illegal activities on their part. Although many of the people who are fined under the City's ordinances will also be involved in other illegal conduct connected to the drugs or firearms found in their vehicles, there is no indication in the record that the plaintiffs in this case were involved in any illegal activity related to the items found in their vehicles. Unwittingly lending one's vehicle to an individual who then independently uses it to carry an illegal item cannot be characterized, standing alone, as a transgression exhibiting significant antisocial behavior.

We cannot accept, however, the notion that the plaintiffs must be considered completely lacking in culpability. The district court concluded, reasonably, that, because the plaintiffs did not report their cars stolen, they must have given some degree of consent to the use of their cars by others,

either before or after that use. The district court further concluded, persuasively, that, "[w]hen an owner consents to release control of his or her vehicle to another person, expressly or otherwise, the owner also accepts the risks inherent to that loss of control." R.65 at 32. The City certainly has a right to sanction a vehicle owner who does not ensure that others with access to the vehicle do not place illegal items in it. *See Bennis v. Michigan,* 516 U.S. 442, 447–48, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996) (discussing a historical line of cases holding owners responsible for the misuse of their property by others). Therefore, although the gravity of the plaintiffs' offense is not high compared to that of persons who themselves place illegal items in their vehicles, the plaintiffs may still be held responsible for allowing their vehicles to be misused.[5]

The harm caused by the plaintiffs' acts, although not readily quantifiable, is certainly real and a legitimate subject of the City's concern. By facilitating illegal activity involving drugs and firearms, the plaintiffs have contributed, however unwittingly, to the spread of drugs and the use of firearms, two major concerns of those responsible for the safety and health of the people of any municipality and a particular concern to a city the size of Chicago. The City is on solid ground both in recognizing that such activity is a contributing factor to the problems it faces and in creating an additional layer of deterrence against such illegal activities to reduce the supportive effect that such activity lends to the drug and firearm problem.

Finally, we compare the amount of the fines to the gravity of the plaintiffs' offense. We must conclude that the fine is not so disproportionate to the gravity of

---

**5.** Other available penalties for the same offense can provide relevant evidence of the gravity of the offense. *See Bajakajian,* 118 S.Ct. at 2038 n. 14. In this case, however, the parties have not brought to our attention any other applicable penalties for merely being the owner of a car in which illegal items are found. There are, of course, federal and state statutes allowing forfeiture of any vehicles used to facilitate the transportation, sale, receipt, possession, or concealment of controlled substances. *See, e.g.,* 21 U.S.C. § 881; Illinois Controlled Substances Act, 720 ILCS 570/505. The application of those statutes to the plaintiffs has not been placed in issue.

the conduct as to offend the strictures of the Excessive Fines Clause. Five hundred dollars is not a trifling sum. But the City, in fixing the amount, was entitled to take into consideration that the ordinances must perform a deterrent function—to induce vehicle owners to ask borrowers hard questions about the uses to which the vehicle would be put or to refrain from lending the vehicle whenever the owner has a misgiving about the items that might find a temporary home in that vehicle. The $500 fine imposed in this case is large enough to function as a deterrent, but it is not so large as to be grossly out of proportion to the activity that the City is seeking to deter. We do not find the $500 fine imposed in this case to be constitutionally excessive.

## B.   Substantive Due Process

■■■   We turn now to the plaintiffs' substantive due process claim. The plaintiffs submit that the City's ordinances are unconstitutional because those provisions do not recognize an innocent-owner defense. They further contend that the district court's reliance on *Bennis v. Michigan*, 516 U.S. 442, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996), to uphold the ordinances was inappropriate for two reasons: first, *Bennis* involved in rem forfeitures whereas this case involves in personam fines, and second, the statute in *Bennis* provided the courts with equitable discretion to protect innocent owners whereas the ordinances in this case do not.

In *Bennis*, police had found the plaintiff's husband engaging in an illegal sexual act in the family car. In the ensuing state civil forfeiture action against the car, the wife's lack of knowledge that her husband would use the car in violation of state law was not a defense to forfeiture of her share of the jointly owned vehicle. *See id.* at 444–45, 116 S.Ct. 994. The Supreme Court of the United States held that the forfeiture did not violate the Due Process Clause. It stated that "a long and unbroken line of cases holds that an owner's interest in property may be forfeited by reason of the use to which the property is put even though the owner did not know that it was to be put to such use." *Id.* at 446–50, 116 S.Ct. 994 (discussing *The Palmyra*, 12 Wheat. 1, 25 U.S. 1, 6 L.Ed. 531 (1827); *Harmony v. United States*, 43 U.S. 210, 2 How. 210, 11 L.Ed. 239 (1844); *Dobbins's Distillery v. United States*, 96 U.S. 395, 24 L.Ed. 637 (1877); *Van Oster v. Kansas*, 272 U.S. 465, 47 S.Ct. 133, 71 L.Ed. 354 (1926); *J.W. Goldsmith, Jr.-Grant Co. v. United States*, 254 U.S. 505, 41 S.Ct. 189, 65 L.Ed. 376 (1921); and *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974)).

In this case, the plaintiffs' first contention is that the historical pedigree enjoyed by civil in rem forfeiture statutes that do not recognize an innocent-owner defense simply does not apply to this case because the City's ordinances impose in personam fines, not in rem forfeitures. Although the Supreme Court has distinguished between in rem civil forfeiture proceedings and in personam civil fine proceedings for purposes of the Double Jeopardy Clause, *see United States v. Ursery*, 518 U.S. 267, 116 S.Ct. 2135, 2142, 135 L.Ed.2d 549 (1996), we cannot accept the suggestion that this distinction affects the substantive due process analysis in this case. Rather, we believe that the situation before us today is controlled by the Court's rationale in *Bennis*.

In *Bennis*, the Court found no substantive due process bar to subjecting a vehicle owner to civil forfeitures, even though the owner did not know that the vehicle would be used for criminal activity by the joint owner of the vehicle. In this context, we agree with the City that any distinction between in rem forfeitures (which proceed against the offending property) and in personam fines (which proceed against the owner) is one of form, but not substance. Both proceedings result in an economic penalty to the owner because his property was used improperly; both serve the same

governmental purpose of deterring unlawful conduct. There is only one functional difference between an in rem forfeiture proceeding and the in personam fines at issue in this case: The in rem forfeiture proceeding results in varying economic consequences from defendant to defendant, based on the value of the property; the in personam fine results in a fixed economic penalty.

Indeed, this single functional distinction is an important consideration in evaluating the plaintiffs' contention that, even if *Bennis* does apply, the City's ordinances are infirm because, unlike the statute upheld in *Bennis*, they contain no provision for the exercise of equitable discretion by the hearing officers to mitigate the loss of innocent owners. This equitable discretion, they contend, was key to the Supreme Court's decision to uphold the Michigan statute in *Bennis* and particularly key to Justice Ginsburg's concurring vote. The absence of equitable discretion in the ordinances in this case, the plaintiffs submit, distinguishes this case from *Bennis* and requires invalidation of the ordinances on substantive due process grounds.

In *Bennis*, the Court did mention that the trial court's remedial discretion weakened the argument for a due process violation. *See Bennis*, 516 U.S. at 453, 116 S.Ct. 994. Moreover, in her concurring opinion, Justice Ginsburg specifically noted the availability of equitable discretion and commented that it was important to prevent "exorbitant applications of the statute." *Id.* at 457, 116 S.Ct. 994 (Ginsburg, J., concurring). We understand the import of these remarks to be that, in the context of the Michigan forfeiture statute, this feature was important because, without such a safety valve, that statute could exact from the innocent owner a forfeiture of property of exorbitantly high value in proportion to the owner's responsibility.

In contrast with the forfeiture statute in *Bennis*, the ordinances at issue in this case impose a fixed fine of $500; this amount does not vary fortuitously with the value of the vehicle involved. Discretion to mitigate an innocent owner's forfeiture is less important when, as in this case, the statute or ordinance imposes a fixed fine rather than forfeiture of an entire item regardless of its value, because a fixed fine removes the potential for drastically, or exorbitantly, harsh penalties on an innocent owner. As we have already held in considering the plaintiffs' excessive fines argument, the $500 amount does not inappropriately reflect the responsibility of the absentee owner for the use of the vehicle. Therefore, these ordinances are not subject to the danger of "exorbitant applications."

We also note a very important difference between this case and the situation before the Supreme Court in *Bennis*. In *Bennis*, the vehicle was, at the time of the underlying offense at issue in that case, in the hands of an individual who shared full ownership rights with his wife. In that case, there truly was an innocent "co-owner." In this case, by contrast, there is no innocent "co-owner." The plaintiffs had the sole authority to decide to whom their vehicles would be lent and to set the restrictions and checks that were appropriate to ensure that the vehicle would not be used to support illegal conduct.

We do not believe that the substantive component of federal due process prevents a state from imposing the civil penalty of $500 on the owner of a vehicle when the owner allows the vehicle to be used by another for illegal activity.

## C. Procedural Due Process

The Chicago ordinance affords the vehicle owner a preliminary hearing within 24 hours. The plaintiffs submit that the procedural component of federal due process is violated because the ordinance as written fails to give the owner adequate notice of this preliminary hearing. A timely notice of the right to contest the loss of a property interest is, they contend, an essential part of procedural due process.

The parties appear to agree that the use of one's automobile, even for a short period of time, is a property right protected by the Due Process Clause. *See Sutton v. City of Milwaukee*, 672 F.2d 644, 645 (7th Cir.1982). "The purpose of a preliminary hearing is for the hearing officer to decide whether 'there is probable cause to believe' both that the illegal items were found in the vehicle and that none of the three recognized defenses applies." Appellee's Br. at 7 (quoting Municipal Code of Chicago §§ 7-24-225(c), 8-20-015(c)). If the hearing officer concludes after the preliminary hearing that probable cause does not exist, the City must return the vehicle to the owner without charge. If the hearing officer determines that probable cause does exist, the vehicle must remain impounded pending a final hearing unless the owner posts a cash bond of $500 plus the towing and storage charges. An owner who does not request a preliminary hearing may obtain his vehicle by posting a bond.

The basic criteria for determining the adequacy of notice under the Due Process Clause are, as the parties agree, found in the seminal case of *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The Supreme Court, through the pen of Justice Jackson, required that the notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314, 70 S.Ct. 652. Notably, the Court emphasized that, when notice is due to an individual, the "means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes." *Id.* at 315, 70 S.Ct. 652 (citations omitted). Our own Chief Judge, writing for this court, has noted that, when it comes to notice, due process requires "reasonable efforts at notice." *Schluga v. City of Milwaukee*, 101 F.3d 60, 62 (7th Cir. 1996). Using reasonable efforts does not, of course, require that authorities use the best possible method of notification. *See Mullane*, 339 U.S. at 314, 70 S.Ct. 652; *Schluga*, 101 F.3d at 62.

In *Mullane*, the Court noted that "[i]t is part of the common prudence for all those who have an interest in (a thing), to guard that interest by persons who are in a situation to protect it." 339 U.S. at 316, 70 S.Ct. 652 (quoting *The Mary, 9 Cranch* 126, 144, 13 U.S. 126, 3 L.Ed. 678 (1815)) (internal quotation marks omitted). Therefore, under most circumstances, notice to the person to whom the article has been entrusted constitutes adequate notice because that person has a duty to let the owner know that the article "is being jeopardized." *Id.* (citing *Ballard v. Hunter*, 204 U.S. 241, 27 S.Ct. 261, 51 L.Ed. 461 (1907)). There seems to be little question, however, that authorities are expected to use the information readily available to them in determining whether to rely on a particular method of notification. *See Robinson v. Hanrahan*, 409 U.S. 38, 39, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972); *see also Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n. 4, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). Thus, they are under a duty to use the information in their possession to determine whether the notice is reasonably calculated to reach the party who has the right to the notification. *See Schluga*, 101 F.3d at 63 (due process violation would result from failure to notify the real owner of the impending sale of his vehicle when the government knows who the real owner is, knows the record owner will not notify the real owner, and could notify the real owner by some inexpensive and efficacious means); *see also Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154,

1161 (2d Cir.1994); *McKee v. Heggy*, 703 F.2d 479, 481–82 (10th Cir.1983).

■ In this case, the person in possession of the vehicle, having been found by the police to be in possession of contraband drugs or of an unregistered firearm, may well be taken into custody or may, at that point, have an interest in not informing the owner of the vehicle of the circumstances surrounding the vehicle's impoundment. *Cf. Mennonite Bd. of Missions*, 462 U.S. at 799, 103 S.Ct. 2706 ("Notice to the property owner, who is not in privity with his creditor and who has failed to take steps necessary to preserve his own property interest, also cannot be expected to lead to actual notice to the mortgagee."). The City ought not be burdened, under all circumstances, by the driver's breach of duty to the owner. *See Nelson v. City of New York*, 352 U.S. 103, 108, 77 S.Ct. 195, 1 L.Ed.2d 171 (1956). However, to the extent that the authorities have · altered significantly, by their arrest of the driver, the possibility of the owner's receiving prompt notice, the City might well have an obligation, depending on the "practicalities and peculiarities" [6] of the situation, to utilize other sources of information readily available to it to determine the identity of the owner and to give that individual notification of the preliminary hearing. *See*

*Williams v. United States Drug Enforcement Admin.*, 51 F.3d 732, 735 (7th Cir. 1995).

■ The district court decided this matter on the pleadings and we therefore have a very meager record upon which to determine whether the procedures set forth in the ordinances provide a constitutionally adequate method of notification. We have sufficient misgivings about the comprehensiveness of the notice provisions in the ordinances to rest our decision on an alternate ground. We need not remand this case for additional proceedings on this point because the plaintiffs before us never alleged either that the officers lacked probable cause to believe the illegal objects were within the vehicles or that the plaintiffs could meet one of the exceptions to liability enumerated in the ordinances. Absent these allegations, there was nothing to contest at a preliminary hearing and therefore no deprivation of due process in its absence. *See Gilbert v. Homar*, 520 U.S. 924, 117 S.Ct. 1807, 1813–14, 138 L.Ed.2d 120 (1997); *Northen v. City of Chicago*, 126 F.3d 1024, 1026 (7th Cir. 1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1306, 140 L.Ed.2d 471 (1998); *see also Codd v. Velger*, 429 U.S. 624, 627–29, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977).[7]

**6.** *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

**7.** In the course of their procedural due process arguments, the plaintiffs also submit that the City has violated their right under the Fourth Amendment to be free of unreasonable seizures. Counts VIII and IX of the complaint appear to allege that the City's seizures of the plaintiffs' vehicles were per se unreasonable because the seizures were carried out pursuant to municipal ordinances that themselves are violative of the plaintiffs' constitutional rights. On appeal, the plaintiffs' Fourth Amendment argument is that the nine-day delay between Ms. Towers' first attempt to retrieve her vehicle by paying the applicable fees and her actual retrieval of the vehicle rendered the seizure unreasonable.

Neither version of the plaintiffs' argument has merit. First, the plaintiffs have not al-

leged that the police officers lacked probable cause to seize the vehicles initially; rather, they contend that the unconstitutionality of the ordinances renders the seizures unreasonable. We agree with the district court that the plaintiffs' failure to state a claim that the ordinances are unconstitutional dooms their argument that the seizures were unreasonable because they were carried out pursuant to unreasonable ordinances.

The plaintiffs' second argument is precluded by *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which held that "a municipality cannot be held liable under § 1983 solely because it employs a tortfeasor." The plaintiffs have not sued the individual City employees whose alleged failure to complete paperwork caused the delay in returning Ms. Towers' vehicle to her; nor does the complaint allege that those employees' actions were taken pursuant to any policy or practice attributable to the City itself. The complaint

## Conclusion

Accordingly, the decision of the district court granting the motion to dismiss is affirmed.[8]

AFFIRMED.

states that "the City of Chicago, acting through its designated employees, had not 'completed the paperwork' necessary to return the car to Towers." R.22 at 9. Under *Monell*, the City cannot be held liable for the constitutional torts of its employees unless the employees' actions were pursuant to official municipal policy. The plaintiffs' complaint contains no allegation that the employees' actions in delaying the return of Ms. Towers' vehicle were pursuant to any policy or custom of the City. Therefore, the plaintiffs have not stated a claim against the City under § 1983 for violation of the Fourth Amendment.

8. The plaintiffs' contention that the district court erred in denying the class certification is moot. *See Inman v. Shalala*, 30 F.3d 840, 844 n. 1 (7th Cir.1994); *Chambers v. American Trans Air, Inc.*, 17 F.3d 998, 1006 (7th Cir.), *cert. denied*, 513 U.S. 1001, 115 S.Ct. 512, 130 L.Ed.2d 419 (1994); *Price v. FCC Nat'l Bank*, 4 F.3d 472, 475 (7th Cir.1993), *cert. denied*, 510 U.S. 1046, 114 S.Ct. 695, 126 L.Ed.2d 662 (1994).