# Illinois Official Reports

## Appellate Court

*Sloper v. City of Chicago, Department of Administrative Hearings*,
2014 IL App (1st) 140712

| | |
|---|---|
| Appellate Court Caption | PATRICK SLOPER, Plaintiff-Appellant, v. THE CITY OF CHICAGO, DEPARTMENT OF ADMINISTRATIVE HEARINGS, and THE CITY OF CHICAGO, DEPARTMENT OF STREETS AND SANITATION, Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-14-0712 |
| Filed | December 30, 2014 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-M1-450165; the Hon. Joseph M. Sconza, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Limbaugh Law Firm, LLC, of Chicago (Zachary D. Limbaugh, of counsel), for appellant.<br><br>Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Justin A. Houppert, Assistant Corporation Counsel, of counsel), for appellees. |

JUSTICE MASON delivered the judgment of the court, with opinion.

Presiding Justice Pucinski and Justice Hyman concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiff Patrick Sloper appeals the finding of the City of Chicago's (City) department of administrative hearings that he violated a municipal ordinance prohibiting narcotics in vehicles and the $3,320 judgment imposed against him for that violation. On appeal, Sloper claims the administrative law officer (ALO) lost jurisdiction to decide the matter because the impoundment hearing was held more than 30 days after Sloper's request. Sloper also claims the penalty imposed was unconstitutionally excessive because the value of his vehicle was substantially less than the penalty and he was an "innocent owner" since he had no knowledge that the individual using his vehicle would possess narcotics inside the vehicle. Finding Sloper's claims unpersuasive, we affirm.

¶ 2                                BACKGROUND

¶ 3    On December 5, 2012, Michelle Calomino dropped Sloper off at the airport and he left his 1995 Ford Escort in her possession. Sloper traveled to Las Vegas to visit his sister and remained there until December 10.

¶ 4    On December 9, 2012 in the vicinity of 4816 S. Leclaire in Chicago, police officers identified a vehicle they were looking for based on information that the vehicle's driver possessed narcotics. The officers stopped the vehicle and asked the driver, later identified as Calomino, to exit the vehicle. Calomino was driving Sloper's vehicle at that time. Following Calomino's admission that she possessed narcotics, the officers recovered six bags of suspected heroin in her possession.

¶ 5    After recovering the narcotics from Calomino, the officers impounded the vehicle pursuant to section 7-24-225 of the Municipal Code of Chicago (Municipal Code) (Chicago Municipal Code § 7-24-225 (amended Nov. 16, 2011)), which subjects a vehicle containing any controlled substance to seizure and impoundment. The ordinance further provides for a $2,000 administrative penalty for a vehicle found to contain narcotics; the penalty increases to $3,000 if the violation takes place within 500 feet of a public park or school. On the impoundment form, the location of the violation was listed as within 500 feet of a park or school. The impoundment form also listed Calomino as the vehicle's driver and Sloper as the vehicle's owner.

¶ 6    The officers inventoried the bags recovered from Calomino and sent the bags to the Illinois state crime laboratory for testing. Following testing on 1.1 grams of the powder, the crime laboratory identified the recovered substance as heroin.

¶ 7    After Sloper returned to Chicago on December 10, Calomino's mother was unable to tell him the whereabouts of Calomino or his vehicle. Sloper checked the City's impoundment records and discovered his vehicle had been impounded.

¶ 8    On December 14, 2012, the City's department of administrative hearings held a probable cause hearing regarding the vehicle's impoundment. The City presented the vehicle

impoundment seizure report in which the police officer stated the driver was found to be in possession of six bags of suspected heroin. The ALO found the City had established probable cause to impound the vehicle and that the vehicle contained unlawful drugs within 500 feet of a park or school. The ALO imposed a $3,235 judgment for the violation, consisting of a $3,000 penalty, a storage fee of $85 and towing charges of $150. Pursuant to Sloper's request, the ALO scheduled the full impoundment hearing for January 11, 2013.

¶ 9 On the scheduled hearing date, the City asked for a continuance because it had not yet received the laboratory test results for the substance recovered from Calomino. Sloper objected to the continuance because a new hearing date would be outside the time period set in section 2-14-132(2) of the Municipal Code (Chicago Municipal Code § 2-14-132(2) (amended July 28, 2011)), which provides that the "hearing date must be no more than 30 days after a request for a hearing has been filed." The ALO noted Sloper's objection, but concluded that the Code required only that the hearing be scheduled within 30 days, which it was and, thus, a continuance beyond 30 days did not violate the ordinance. The ALO continued the matter to February 8, 2013. Sloper's vehicle remained impounded.

¶ 10 At the next hearing on February 8, the ALO granted Sloper's request for a continuance because he had just retained an attorney that day who needed additional time to review the evidence and obtain additional information. The ALO set March 15, 2013 as the new hearing date.

¶ 11 On March 15, the ALO held a hearing and found that Sloper's vehicle contained narcotics resulting in a violation of section 7-24-225, but the City failed to establish that the vehicle was within 500 feet of a park or school at the time of the violation. The ALO imposed a $3,320 judgment consisting of a $2,000 penalty, $1,170 in storage fees and a $150 tow fee. Sloper objected to the penalty claiming it was unconstitutionally excessive.

¶ 12 Sloper sought review of the administrative agency's decision in the circuit court asserting, in part, that the impoundment hearing was untimely because it occurred more than 30 days after his request for a hearing and the $2,000 penalty was grossly disproportionate to the conduct it purported to deter. On February 7, 2014, the circuit court affirmed the administrative agency's decision. Sloper timely appealed.

¶ 13 ANALYSIS

¶ 14 On appeal, Sloper first claims the administrative agency's decision should be reversed because the agency lost jurisdiction over the matter when it failed to conduct an impoundment hearing within 30 days of his request. According to Sloper's interpretation of section 2-14-132(2), a hearing must be scheduled and completed within 30 days of a written request. Because the hearing was not completed within the 30 days, Sloper asserts the administrative agency's decision was untimely and must be reversed.

¶ 15 The Illinois Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2012)) governs our review of the ALO's decision. 735 ILCS 5/3-102 (West 2012); Chicago Municipal Code § 2-14-102 (added Apr. 29, 1998). On administrative review, this court reviews the administrative agency's final decision, not the circuit court's decision. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006); *Pedersen v. Village of Hoffman Estates*, 2014 IL App (1st) 123402, ¶ 48. An administrative agency's interpretation of a statute's language constitutes a question of law, which we review *de novo*. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). But we will not

- 3 -

substitute our interpretation of a statutory provision for a reasonable interpretation adopted by the agency charged with the statute's administration. *Hadley v. Illinois Department of Corrections*, 224 Ill. 2d 365, 371 (2007).

¶ 16   When interpreting a statute, or, as in this case, a municipal ordinance, a fundamental principle of statutory construction is to ascertain and give effect to the intent of the drafters. *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 6-7 (2009). The ordinance's language, which must be given its plain and ordinary meaning, is the best indicator of the drafters' intent. *Id.* at 6. We will apply the ordinance as written where the ordinance's language is clear and unambiguous, and no exceptions, limitations or conditions that the drafters did not express will be read into the enactment. *Id.* at 6-7; *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 426 (2002). Further, we must read all of the ordinance's provisions as a whole. *Id.* at 422. With these principles in mind, we turn to the jurisdictional issue raised by Sloper on appeal.

¶ 17   Section 2-14-132(2) provides in relevant part:

> "The owner of record seeking a hearing must file a written request for a hearing with the department of administrative hearings no later than 15 days after notice [of the impoundment] was mailed or otherwise given under this subsection. The hearing date must be no more than 30 days after a request for a hearing has been filed. If, after the hearing, the administrative law officer determines by a preponderance of the evidence that the vehicle was used in the violation *** the administrative law officer shall enter an order finding the owner of record liable to the city for the amount of the administrative penalty prescribed for the violation, plus towing and storage fees." Chicago Municipal Code § 2-14-132(2) (amended July 28, 2011).

¶ 18   Because the ordinance prescribes the performance of an act by a public official or public body, another relevant consideration is whether the provision is mandatory or directory. *People v. Delvillar*, 235 Ill. 2d 507, 516 (2009); *Andrews v. Foxworthy*, 71 Ill. 2d 13, 21 (1978). While it is clear that the obligation to hold a hearing after written demand is mandatory, a separate issue is posed with respect to the requirement that the "hearing date" be no more than 30 days after the written demand. The determination of whether a provision is mandatory or directory depends on whether the language used dictates a particular consequence for failing to comply with the provision's command. *In re M.I.*, 2013 IL 113776, ¶ 16. Absent such language, the ordinance is directory and no particular consequence results from noncompliance. *Id.* Consequences still result from a directory reading, but such a reading " 'acknowledges only that no *specific* consequence is triggered by the failure to comply with the [ordinance].' " (Emphasis in original.) *Id.* (quoting *Delvillar*, 235 Ill. 2d at 515).

¶ 19   An ordinance including language that dictates a procedural command to a governmental official is presumed directory rather than mandatory, which means the failure to comply with a procedural step does not invalidate the governmental action to which the procedural requirement relates. *In re James W.*, 2014 IL 114483, ¶ 35. Either of the following two conditions overcomes that presumption: "(1) when there is negative language prohibiting further action in the case of noncompliance or (2) when the right the provision is designed to protect would generally be injured under a directory reading." *Id.* Neither condition applies here.

¶ 20   We find that section 2-14-132(2)'s requirement that the hearing date "must be no more than 30 days" after the filing of a request for a hearing is directory rather than mandatory, and, therefore, we reject Sloper's claim that the administrative agency lost jurisdiction by failing to

conduct the hearing within 30 days. The plain and unambiguous language of section 2-14-132(2) expressly requires the administrative agency to schedule a hearing *date* within 30 days after a request, but the ordinance's plain language does not compel the conclusion that the failure to commence and conclude the hearing within that period deprives the agency of jurisdiction. Important to this analysis is the fact that the ordinance fails to impose any consequences if the hearing is not scheduled within 30 days nor does it contain any negative language preventing further action if the 30-day time limit is not met. *Id.* ¶¶ 35-36; *Delvillar*, 235 Ill. 2d at 517. Moreover, the purpose of section 2-14-132(2) is to provide the owner of an impounded vehicle with the right to request a hearing "to challenge whether a violation of this Code for which seizure and impoundment applies has occurred." Chicago Municipal Code § 2-14-132(2) (amended July 28, 2011). An ALO's decision to continue a hearing date beyond 30 days does not defeat the ordinance's purpose because the owner may still challenge the violation. See *In re James W.*, 2014 IL 114483, ¶ 35 (procedural command deemed mandatory when the right the provision is designed to protect would generally be injured under a directory reading). Further, as we discuss below, because a vehicle owner is able to secure the vehicle's release by paying the penalty and fees, subject to a refund if the owner prevails at the hearing, the owner can avoid an extended period of deprivation of use of the vehicle. Thus, the ordinance's plain language does not defeat the presumption of a directory reading of the procedural command and a directory interpretation is most consistent with the drafters' intent.

¶ 21    Sloper relies on *People v. Schaefer*, 154 Ill. 2d 250 (1993). *Schaefer* addressed the hearing procedure for a challenge to the summary suspension of driving privileges, and the relevant statutory language stated that " '[w]ithin 30 days after receipt of the written request *** the hearing *shall be conducted* by the circuit court having jurisdiction.' " (Emphasis added.) *Id.* at 254 (quoting Ill. Rev. Stat. 1989, ch. 95½, ¶ 2-118.1(b)). In *Schaefer*, the State asked for a continuance prior to the scheduled hearing date, which the trial court granted despite the defendant's objection that the new hearing date would exceed the 30-day period required by the statute. *Id.* at 263. The defendant filed a petition seeking to rescind the summary suspension of his driving privileges and our supreme court held the trial court erred in denying the petition. *Id.* at 264. The court also recognized that a driver's license is considered a property interest protected by the due process clause of the United States and Illinois Constitutions requiring notice and an opportunity to be heard. *Id.* at 261. The court concluded that in order to comply with due process, the hearing mandated under the statute must–according to the language of the statute–be held within 30 days of the written request for a hearing. *Id.* at 261-62.

¶ 22    *Schaefer* is distinguishable because the language at issue there expressly stated that the hearing *shall be conducted* within 30 days, but a similar direction is absent from the ordinance here, which merely provides that the hearing *date* must be no more than 30 days after a request. If the city council had intended that the hearing following the impoundment of a vehicle must be *held* or *conducted* within 30 days of a written demand, it could have easily drafted the ordinance to say so. Further, the due process concerns implicated in *Schaefer* are also not present here because under the ordinance a vehicle owner may secure the release of the vehicle by paying the penalty and storage and tow fees upon receipt of the impoundment notice, and obtain a refund if he later prevails after the impoundment hearing. See *Jackson v. City of Chicago*, 2012 IL App (1st) 111044, ¶ 86 (rejecting a vehicle owner's claim that it was unfair to continue an impoundment hearing because doing so prolonged the deprivation of her vehicle

(citing Chicago Municipal Code §§ 2-14-132(1), (2), (3) (amended Nov. 18, 2009))). In contrast, in *Schaefer* the statute provided no means by which driving privileges could be restored prior to a hearing.

¶ 23    Adopting Sloper's interpretation of section 2-14-132(2) that a hearing must be completed within 30 days without exception would require this court to read into the ordinance a requirement that the drafters chose not to include. Consequently, we decline Sloper's request to add unwritten limitations to a clearly and unambiguously drafted ordinance. See *Landis*, 235 Ill. 2d at 6-7 (reviewing courts may not read in exceptions or conditions when applying a clear and unambiguous statute).

¶ 24    Moreover, section 2-14-076 of the Municipal Code (Chicago Municipal Code § 2-14-076 (adopted July 10, 1996)) expressly provides the ALO with the right to grant a continuance upon a finding of good cause. On December 14, 2012 during the probable cause hearing, the administrative agency scheduled the full impoundment hearing for January 11, 2013, which was within 30 days. On January 11, the City requested a continuance because laboratory test results on the substance recovered from Calomino had not yet been received. Because the test results were necessary to establish whether the substance recovered was narcotics, an essential element of a violation of section 7-24-225, the ALO clearly had good cause to continue the hearing. Reading the ordinance as a whole, we find that the ALO properly exercised his discretion to grant a continuance allowing the City additional time to obtain the laboratory test results of the suspected narcotics. Contrary to Sloper's assertion, the intent and language of sections 2-14-076 and 7-24-225 do not conflict, but may easily be harmonized. Following Sloper's objection to the City's request for a continuance, the ALO properly concluded that under the ordinance an impoundment hearing must be scheduled within 30 days, which was done in compliance with the ordinance, but that the hearing need not be conducted or completed within the same time frame. Nothing in the terms of the ordinance precludes an ALO from granting a continuance of the hearing date for good cause shown. We conclude the ALO reasonably interpreted the ordinance he was charged with enforcing. *Hawthorne Race Course, Inc. v. Illinois Racing Board*, 2013 IL App (1st) 111780, ¶ 27 (citing *Hadley v. Illinois Department of Corrections*, 224 Ill. 2d 365, 370 (2007)). Consequently, the administrative agency retained jurisdiction to decide the matter and we reject Sloper's jurisdictional argument.

¶ 25    Sloper's other contention on appeal is that the $2,000 penalty mandated by the ordinance is excessive and thus violates the constitutional prohibition against grossly disproportionate fines.[1] Sloper raises an "as applied" challenge to the constitutionality of the penalty imposed under section 7-24-225(a) asserting the penalty was excessive considering the facts of this case where the value of his vehicle was substantially less than the penalty amount and he was not himself in possession of narcotics in the vehicle.

---

[1]The City responds that the United States Supreme Court has never held that the eighth amendment applies to states and local governments through the fourteenth amendment. See *McDonald v. City of Chicago*, 561 U.S. 742, 765 n.13 (2010) ("We have never decided whether the *** Eighth Amendment's prohibition of excessive fines applies to the States through the Due Process Clause."). We need not address the City's incorporation claim because Sloper's contention is readily disposed of on its merits.

¶ 26    The eighth amendment prohibits the imposition of excessive fines. U.S. Const., amend. VIII. Fines are considered excessive if they are " 'grossly disproportional to the gravity of a defendant's offense.' " *Express Valet, Inc. v. City of Chicago*, 373 Ill. App. 3d 838, 856 (2007) (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)). Municipal ordinances, just like statutes, are presumed constitutional. *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 200 (2009); *Jackson*, 2012 IL App (1st) 111044, ¶ 20. The party challenging the ordinance's constitutionality must clearly establish a constitutional violation to overcome that presumption. *Id.* We review a challenge to the constitutionality of an ordinance *de novo*. *Id.* In an "as applied" challenge, the plaintiff protests only how the statute was applied against him in a particular situation, and the facts of his particular case become relevant. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 306 (2008).

¶ 27    Sloper cites *Towers v. City of Chicago*, 173 F.3d 619, 624 (7th Cir. 1999), where the plaintiffs also raised an excessive fines claim based on the same ordinance asserting the civil penalty bore no relationship to their culpability as innocent owners of vehicles that were used without their knowledge for prohibited purposes. The *Towers* court recognized that the penalty served the goal of deterring owners from allowing their vehicles to be used for prohibited purposes and the City had a right to sanction vehicle owners who fail to ensure that individuals with access to the vehicles refrain from placing illegal substances or other contraband in the vehicles. *Id.* at 625. When *Towers* was decided, section 7-24-225(a) imposed a $500 penalty and the court held the penalty was large enough to function as a deterrent, but not so large as to be grossly disproportionate to the activity the City wanted to deter. *Id.* at 626; see *Jackson v. City of Chicago*, 2012 IL App (1st) 111044, ¶¶ 40-41 (upholding the constitutionality of section 7-24-225, which, as amended, imposed a $1,000 penalty, despite its lack of an innocent owner exception); *People v. Jaudon*, 307 Ill. App. 3d 427, 439 (1999) (adopting *Towers'* reasoning and holding that the $500 penalty imposed on vehicle owners who lend their vehicles to individuals who place unlawful weapons inside the vehicles is not grossly disproportionate to the offenses committed). Relying on *Towers*, Sloper claims the current $2,000 penalty is grossly disproportionate when considered in the context of a case in which his only offense is "perhaps lending his vehicle to the wrong person" and where his vehicle is only worth a fraction of the fine imposed.

¶ 28    But the fact that over 13 years, the penalty under section 7-24-225 has increased from $500 to $2,000 does not, standing alone, pose any constitutional issues. And Sloper, disavowing a facial challenge to the ordinance, does not so contend. Further, the added circumstance that Sloper's vehicle is worth less than the fixed penalty imposed does not transform an otherwise facially valid penalty into an unconstitutionally excessive fine. The City's decision to penalize owners of vehicles in which drugs or other contraband are found, is, as *Towers* recognized, aimed at deterring such activity and bears no relationship to the value of the vehicle in which the prohibited activity occurs. *Towers*, 173 F.3d at 625, 627. Moreover, the imposition of uniform fines for prohibited activity poses fewer constitutional concerns than statutes requiring forfeiture of the innocent owner's entire interest in the involved property regardless of its value. *Id.* at 627. And prospects of constitutional infirmity would increase if the amount of the fine depended on the value of the property involved. *Id.* ("[A] fixed fine removes the potential for drastically, or exorbitantly, harsh penalties on an innocent owner."). We cannot say that the City's selection of a substantial fine–even granting that the fine exceeds by a wide margin the value of Sloper's vehicle–renders the ordinance unconstitutional as applied to

Sloper. Sloper identifies no authority that obligates a municipality to implement a sliding scale of fines to account for such disparity. Moreover, the penalty is uniformly imposed as a result of the prohibited conduct and is unrelated to the value of the vehicle in which the conduct occurs.

¶ 29      Sloper's additional argument regarding the amount of fees imposed (aggregating $1,320–more than one-third of the entire judgment) is likewise without merit given that the amount of the fees was, in large part, a product of Sloper's decision to refrain from paying the penalty and accumulated fees in order to secure the release of his car. Again, Sloper cites no authority for his claim that the amount of the fees charged for towing and storing the impounded vehicle gives rise to any violation of the owner's constitutional rights.

¶ 30      <center>CONCLUSION</center>

¶ 31      For the reasons stated, the administrative agency's finding that Sloper violated section 7-24-225 and the penalty and fees imposed for that violation are affirmed.

¶ 32      Affirmed.