# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Jackson v. City of Chicago*, 2012 IL App (1st) 111044

---

| | |
|---|---|
| Appellate Court Caption | IVY JACKSON, Plaintiff-Appellant, v. THE CITY OF CHICAGO, Defendant-Appellee. |
| District & No. | First District, Sixth Division<br>Docket No. 1-11-1044 |
| Filed | June 29, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The constitutionality of sections 7-24-225, 2-14-132(3), 2-14-132(7) and 2-14-080 of the Chicago Municipal Code allowing the impoundment and imposition of a penalty for a vehicle found to contain controlled substances or cannabis was upheld. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-M1-450118; the Hon. Patrick T. Rogers, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Jason W. Bruce, of Chicago, for appellant.

Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Justin A. Houppert, Assistant Corporation Counsel, of counsel), for appellee.

Panel

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.

Justices Lampkin and Palmer concurred in the judgment and opinion.

## OPINION

¶ 1 Plaintiff Ivy Jackson's vehicle was impounded by the defendant City of Chicago (the City) when police discovered two individuals smoking cannabis in the vehicle. After an administrative hearing, the City's department of administrative hearings (the Department) found Jackson liable for a violation of section 7-24-225 of the Chicago Municipal Code (Municipal Code) (Chicago Municipal Code § 7-24-225 (amended Dec. 15, 2004)), which provided that the owner of a vehicle found to contain controlled substances or cannabis was liable for an administrative penalty and which permitted the impoundment of the vehicle. On appeal to the circuit court of Cook County, Jackson raised a number of issues, including challenging the constitutionality of several of the ordinances applicable to the impoundment of her vehicle. The circuit court affirmed the Department's finding of liability and Jackson now appeals to the appellate court, challenging the constitutionality of sections 7-24-225, 2-14-132(3), 2-14-132(7), and 2-14-080 of the Municipal Code (Chicago Municipal Code §§ 7-24-225 (amended Dec. 15, 2004), 2-14-132(3), (7), 2-14-080 (amended Nov. 18, 2009)) under the state and federal constitutions. For the reasons that follow, we affirm.

¶ 2                                    BACKGROUND

¶ 3 On appeal, Jackson does not challenge the factual findings of the Department. Accordingly, we relate the facts as established at the hearing.

¶ 4 On January 26, 2010, Jackson appeared *pro se* at a hearing before an administrative law judge (ALJ) to contest the impoundment of her vehicle, which occurred on December 29, 2009. The vehicle was impounded pursuant to section 7-24-225 of the Municipal Code, which provides:

"(a) The owner of record of any motor vehicle that contains any controlled substance or cannabis, as defined in the Controlled Substances Act, 720 ILCS 570/100, et seq., and the Cannabis Control Act, 720 ILCS 550/1, et seq., or that is used in the purchase, attempt to purchase, sale or attempt to sell such controlled substances or cannabis shall

be liable to the city for an administrative penalty of $1,000.00 plus any applicable towing and storage fees. Any such vehicle shall be subject to seizure and impoundment pursuant to this section. This subsection shall not apply: (1) if the vehicle used in the violation was stolen at the time and the theft was reported to the appropriate police authorities within 24 hours after the theft was discovered ***; (2) if the vehicle is operating as a common carrier and the violation occurs without the knowledge of the person in control of the vehicle; or (3) if the owner proves that the presence of the controlled substance or cannabis was authorized under the Controlled Substances Act or the Cannabis Control Act.

    (b) Whenever a police officer has probable cause to believe that a vehicle is subject to seizure and impoundment pursuant to this section, the police officer shall provide for the towing of the vehicle to a facility controlled by the city or its agent. When the vehicle is towed, the police officer shall notify any person identifying himself as the owner of the vehicle or any person who is found to be in control of the vehicle at the time of the alleged violation, if there is such a person, of the fact of the seizure and of the vehicle owner's right to request a preliminary hearing to be conducted under Section 2-14-132 of this code.

    (c) The provisions of Section 2-14-132 shall apply whenever a motor vehicle is seized and impounded pursuant to this section." Chicago Municipal Code § 7-24-225 (amended Dec. 15, 2004).

¶ 5    The City's sole witness at the hearing was Chicago police officer Ugarte.[1] Officer Ugarte testified that on December 29, 2009, at approximately 8:20 p.m., he observed a vehicle parked on South Loomis in Chicago with two occupants, one in the driver's seat and one in the front passenger seat. The occupant in the driver's seat was slumped over the steering wheel, and Officer Ugarte approached the vehicle to check on his well-being. When the officer approached from the driver's side, he observed the driver make a move with his right hand to pass a partially burned rolled cigar that the officer suspected contained cannabis to the front passenger, who took it from the driver.

¶ 6    Officer Ugarte and his partner removed the occupants from the vehicle, and the occupant in the passenger's seat dropped a Ziploc bag containing a crushed plant-like substance that Officer Ugarte suspected was cannabis onto the passenger seat. The occupants were arrested for possession of cannabis. After the incident, the vehicle was towed and impounded.

¶ 7    In addition to Officer Ugarte's testimony, an affidavit in lieu of a court appearance was submitted on behalf of Illinois State Police forensic scientist Laneen Blount. The affidavit stated that Blount performed an analysis which concluded that the cigar weighed 1.4 grams and contained cannabis, and the bag and substance therein weighed 1.6 grams and contained cannabis.

¶ 8    The affidavit was permitted in evidence pursuant to section 2-14-132(7) of the Municipal Code, which provides:

---

[1]The record does not disclose Officer Ugarte's first name.

"In a hearing on the propriety of impoundment under Section 7-24-226, any sworn or affirmed report, including a report prepared in compliance with Section 11-501.1 of the Illinois Vehicle Code, that (a) is prepared in the performance of a law enforcement officer's duties and (b) sufficiently describes the circumstances leading to the impoundment, shall be admissible evidence of the vehicle owner's liability under Section 7-24-226 of this Code, and shall support a finding of the vehicle owner's liability under Section 7-24-226, unless rebutted by clear and convincing evidence." Chicago Municipal Code § 2-14-132(7) (amended Nov. 18, 2009).

¶ 9 In her defense, Jackson argued that there was no probable cause for the officer to approach the vehicle because the driver was actually on the telephone while sitting in the vehicle, not slumped over. She also argued that the occupants were arrested because the police believed a tablet recovered from the occupant in the driver's seat was an ecstasy pill, which forensics showed to contain no "scheduled substance." Jackson testified that the vehicle was parked outside her home and she informed the officer that the vehicle belonged to her. Jackson further testified that she was not present when the incident occurred.

¶ 10 The ALJ found the officer's testimony credible to demonstrate a violation of section 7-24-225 due to the presence of cannabis and further found that, therefore, the City had the right to impound the vehicle. On January 26, 2010, the Department found Jackson liable for a violation of section 7-24-225 of the Municipal Code and imposed a penalty of $1,000, along with storage and tow fees, for a total judgment of $2,005.

¶ 11 On January 20, 2010, prior to Jackson's hearing but after the impoundment of her vehicle, Mitsubishi Motors Credit of America (Mitsubishi), the lienholder of Jackson's vehicle, sent Jackson a letter stating that a portion of her contract provided that she "agree[d] not to expose the vehicle to misuse or confiscation." The letter further stated that Jackson materially breached her contract, that Mitsubishi invoked its acceleration clause and terminated the loan agreement, and that Jackson had 10 days to pay the balance due under the loan agreement or else Mitsubishi would "take all necessary measures to recover the vehicle and thereafter sell it pursuant to the terms of [Jackson's] contract."

¶ 12 The record indicates that Mitsubishi included a paragraph in its loan agreement titled "Ownership and Loss" specifically addressing confiscation of vehicles. In that paragraph, Mitsubishi reserved the right to terminate a loan if a vehicle is exposed to "misuse or confiscation." The agreement further contains a section entitled "Repossession of the Vehicle for Failure to Pay," which states that "[i]f you fail to pay according to the payment schedule or if you break any of the agreements in this contract (default), the Creditor shall have the right in accordance with state law to enter onto property without breach of the peace and take the vehicle in which it has a security interest. The Creditor may exercise this right without notice to you."

¶ 13 On February 1, 2010, the City released the vehicle to Mitsubishi, after Mitsubishi informed the City that due to Jackson's default on the installment purchase contract, it was exercising its right to repossess the vehicle. The City permitted Mitsubishi to take possession of the vehicle due to section 2-14-132(3) of the Municipal Code, which provides:

"An administrative penalty, plus towing and storage fees, imposed pursuant to this

section shall constitute a debt due and owing to the city which may be enforced pursuant to Section 2-14-103 or in any other manner provided by law. Any amounts paid pursuant to this section shall be applied to the penalty. Except as provided otherwise in this section, a vehicle shall continue to be impounded until (1) the administrative penalty, plus any applicable towing and storage fees, plus all amounts due for outstanding final determinations of parking and/or compliance violations (if the vehicle is also subject to immobilization for unpaid final determinations of parking and/or compliance violations), is paid to the city, in which case possession of the vehicle shall be given to the person who is legally entitled to possess the vehicle; or (2) the vehicle is sold or otherwise disposed of to satisfy a judgment or enforce a lien as provided by law. Notwithstanding any other provision of this section, whenever a person with a lien of record against a vehicle impounded under this section has commenced foreclosure proceedings, possession of the vehicle shall be given to that person if he or she pays the applicable towing and storage fees and agrees in writing to refund to the city the net proceeds of any foreclosure sale, less any amounts necessary to pay all lien holders of record, up to the total amount of penalties imposed under this section. Notwithstanding any other provision of this section, no vehicle that was seized and impounded pursuant to Section 7-24-225 shall be returned to the record owner unless and until the city has received notice from the appropriate state, or where applicable, federal officials that (i) forfeiture proceedings will not be instituted; or (ii) forfeiture proceedings have concluded and there is a settlement or a court order providing that the vehicle shall be returned to the owner of record." Chicago Municipal Code § 2-14-132(3) (amended Nov. 18, 2009).

In the lienholder payment agreement that Mitsubishi was required to execute prior to release of the vehicle, the City stated that it required companies to provide the department of revenue with all of the following documentation establishing a perfected secured lien and proof of purchaser default: (1) a true and accurate copy of the certificate of title for the vehicle issued by the Illinois Secretary of State's office showing the lienholder with first priority; (2) the motor vehicle installment agreement for the vehicle; (3) a notarized affidavit detailing the default of the owner/purchasor; and (4) contract provisions granting the lienholder the right of possession.

¶ 14    On March 2, 2010, Jackson filed a complaint for administrative review, alleging, *inter alia*, that sections 7-24-225 and 2-14-132 of the Municipal Code violated article I, sections 2 and 6, of the Illinois Constitution and the fourth, fifth, and fourteenth amendments of the United States Constitution because "the impounding of vehicles and the procedures for hearings thereon constitute[d] deprivations of property without due process of law and an unreasonable search and seizure." Ill. Const. 1970, art. I, §§ 2, 6; U.S. Const., amends. IV, V, XIV. Accordingly, Jackson asked for those sections of the Municipal Code to be found unconstitutional.

¶ 15    On September 9, 2010, Jackson filed a "specification of errors." Jackson claimed, *inter alia*, that sections 7-24-225 and 2-14-132 of the Municipal Code were unconstitutional for several reasons. She claimed that they were unconstitutional as applied to her because they violated her due process rights under article I, section 2, of the Illinois Constitution and the fourth and fourteenth amendments to the federal constitution since she identified herself as

an owner at the scene but was not informed of her right to a preliminary hearing. She also claimed that they were unconstitutional under the same provisions of the constitutions because the ordinances did not provide an innocent owner exception to impoundment and therefore violated her procedural and substantive due process rights, and also claimed that they were unconstitutional because the ordinance permitted the City to retain the vehicle pending a determination of whether forfeiture proceedings would be instituted. She further claimed that the impoundment ordinance violated the equal protection clauses of both constitutions, that they violated her due process rights by permitting the release of the vehicle to a lienholder prior to the point at which she could seek judicial review of the impoundment, and that section 7-24-225 of the Municipal Code was unconstitutionally vague.

¶ 16     On March 11, 2011, the circuit court, in a written order without any stated reasoning, affirmed the Department's decision and denied Jackson's request to declare sections 7-24-225 and 2-14-132 unconstitutional. This appeal follows.

¶ 17                                    ANALYSIS

¶ 18     On appeal, Jackson raises constitutional arguments concerning four sections of the Municipal Code. She argues: (1) section 7-24-225 of the Municipal Code is unconstitutional because it violates a vehicle owner's substantive due process rights under the Illinois Constitution and is an unreasonable seizure in violation of the state and federal constitutions; (2) section 2-14-132(3) of the Municipal Code is unconstitutional because it violates a vehicle owner's procedural due process rights under the state and federal constitutions, violates the separation of powers provision of the state constitution, and is an impermissible taking for private use; and (3) section 2-14-132(7) violates a vehicle owner's due process right to confront witnesses, as does section 2-14-080 as applied to drug cases. We consider each argument in turn.

¶ 19     Judicial review of the Municipal Code is governed by the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2008)). Chicago Municipal Code § 2-14-102 (added Apr. 29, 1998). The Administrative Review Law provides for judicial review of questions of law and fact contained in the record. *Lyon v. Department of Children & Family Services*, 209 Ill. 2d 264, 271 (2004). An administrative agency's findings of fact are not reversed unless they are against the manifest weight of the evidence, and questions of law are reviewed *de novo*. See *Lyon*, 209 Ill. 2d at 271. *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 20     Whether an ordinance violates the constitution constitutes a question of law and is reviewed *de novo*. See *Lyon*, 209 Ill. 2d at 271. "In construing the validity of a municipal ordinance, the same rules are applied as those which govern the construction of statutes." *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 306 (2008). Municipal ordinances are presumed constitutional (*Chicago Allis Mfg. Corp. v. Metropolitan Sanitary District of Greater Chicago*, 52 Ill. 2d 320, 327 (1972); *Van Harken v. City of Chicago*, 305 Ill. App. 3d 972, 976 (1999) (citing *City of Chicago Heights v. Public Service Co. of Northern Illinois*, 408 Ill. 604, 609 (1951)), and the challenging party has the burden of establishing a clear constitutional violation (*People v. One 1998 GMC*, 2011 IL 110236, ¶ 20). A court will

affirm the constitutionality of a statute or ordinance if it is "reasonably capable of such a determination" and "will resolve any doubt as to the statute's construction in favor of its validity." *One 1998 GMC*, 2011 IL 110236, ¶ 20 (citing *People v. Johnson*, 225 Ill. 2d 573, 584 (2007), and *People v. Boeckmann*, 238 Ill. 2d 1, 6-7 (2010)).

¶ 21     As an initial matter, the City urges us to dismiss the constitutional challenges raised by Jackson under the doctrine of waiver. Generally, issues or defenses not raised before the administrative agency will not be considered for the first time on administrative review. *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 396-97 (2002). Nevertheless, our supreme court has instructed that, although it had applied the waiver rule to prevent a party from raising a constitutional issue that had not been raised before the administrative agency, it "has refrained from adopting a bright-line rule 'requiring' a party to raise all constitutional issues before the agency. Rather, we have held that it is 'advisable' to assert a constitutional challenge before the administrative tribunal." *Arvia v. Madigan*, 209 Ill. 2d 520, 527 (2004).

¶ 22     Additionally, we note that Jackson appeared *pro se* during the administrative hearing. While a party's *pro se* status does not relieve her from complying with procedural rules, "[w]e believe there ought to be some consideration for the fact" that Jackson was initially unrepresented by counsel. *Dombrowski v. City of Chicago*, 363 Ill. App. 3d 420, 425 (2005). Moreover, the waiver doctrine is a limitation on the parties, not on the reviewing court. *Niles Township High School District 219 v. Illinois Educational Labor Relations Board*, 369 Ill. App. 3d 128, 137 (2006); *Luss v. Village of Forest Park*, 377 Ill. App. 3d 318, 330 (2007). Thus, we choose not to find forfeiture here and proceed to consider the case on its merits.

¶ 23                    I. Facial and As-Applied Constitutional Challenges

¶ 24     All of Jackson's arguments on appeal concern the constitutionality of various provisions of the Municipal Code. In order to properly analyze these claims, since Jackson's brief does not specify the type of challenge raised[2], we must first determine whether Jackson challenges the facial validity of the ordinances or challenges the validity of the ordinances as applied to the particular circumstances of her case. Thus, we briefly discuss the differences between the two types of challenges.

¶ 25     In a facial challenge, a court examines whether the statute or ordinance at issue contains "an inescapable flaw that renders the *** statute unconstitutional under every circumstance." *One 1998 GMC*, 2011 IL 110236, ¶ 58. "[A] challenge to the facial validity of a statute is the most difficult challenge to mount successfully because an enactment is invalid on its face only if no set of circumstances exists under which it would be valid." *One 1998 GMC*, 2011 IL 110236, ¶ 20 (citing *Napleton*, 229 Ill. 2d at 305-06); see also *In re M.T.*, 221 Ill. 2d 517, 536 (2006) ("Successfully making a facial challenge to a statute's constitutionality is extremely difficult, requiring a showing that the statute would be invalid under *any* imaginable set of circumstances." (Emphasis in original.)). Since a successful facial

---

[2]At oral argument, Jackson's attorney indicated that Jackson was raising facial challenges to the ordinances at issue.

challenge will void the statute for all parties in all contexts, " '[f]acial invalidation "is, manifestly, strong medicine" that "has been employed by the court sparingly and only as a last resort." ' " *Poo-bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009) (quoting *National Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998), quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)). "The invalidity of the statute in one particular set of circumstances is insufficient to prove its facial invalidity." *In re M.T.*, 221 Ill. 2d at 536-37. " ' "[S]o long as there exists a situation in which a statute could be validly applied, a facial challenge must fail." ' " *In re M.T.*, 221 Ill. 2d at 537 (quoting *People v. Huddleston*, 212 Ill. 2d 107, 145 (2004), quoting *Hill v. Cowan*, 202 Ill. 2d 151, 157 (2002)).

¶ 26    By contrast, in an as-applied challenge, "a plaintiff protests against how an enactment was applied in the particular context in which the plaintiff acted or proposed to act, and the facts surrounding the plaintiff's particular circumstances become relevant." *Napleton*, 229 Ill. 2d at 306. In short, an as-applied challenge "requires a party to show that the statute violates the constitution as the statute applies to him." *People v. Brady*, 369 Ill. App. 3d 836, 847 (2007) (citing *People v. Garvin*, 219 Ill. 2d 104, 117 (2006)).

¶ 27    Whether a challenge is a facial or an as-applied challenge affects the scope of our review, because the facts of a party's case become relevant only if he or she brings an as-applied challenge. See *Byrd v. Hamer*, 408 Ill. App. 3d 467, 487-88 (2011). As noted, in an as-applied challenge, the challenging party contests only how the statute or ordinance was applied against him or her within a particular context, and, as a result, the facts of his or her particular case become relevant. *Napleton*, 229 Ill. 2d at 306. By contrast, where the challenging party has chosen to mount only a facial challenge, the facts of his or her particular case do not affect our review. The type of challenge also affects the remedy available to a prevailing party. "[I]f a plaintiff prevails in an as-applied claim, he may enjoin the objectionable enforcement of a statute only against himself, while a successful facial challenge voids enactment in its entirety and in all applications." *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 498 (2008) (citing *Napleton*, 229 Ill. 2d at 306). Where a statute or ordinance is constitutional as applied to a party, a facial challenge will also fail, since there is necessarily at least one circumstance in which the statute or ordinance is constitutional. *Horvath v. White*, 358 Ill. App. 3d 844, 854 (2005); see also *Freed v. Ryan*, 301 Ill. App. 3d 952, 958 (1998).

¶ 28                              II. Section 7-24-225

¶ 29    Jackson first challenges the constitutionality of section 7-24-225 of the Municipal Code, arguing that the ordinance is unconstitutional due to its lack of an innocent owner exception. Jackson claims that the lack of such an exception violates a vehicle owner's substantive due process rights under article I, section 2, of the state constitution and constitutes an unreasonable seizure under article I, section 6, of the state constitution and the fourth and fourteenth amendments to the federal constitution.

¶ 30    In challenging section 7-24-225 of the Municipal Code, Jackson raises facial challenges, since she challenges the language of the ordinance generally and makes no mention of the particular circumstances of her impoundment. Thus, to succeed, Jackson has the burden of

proving that no situation exists in which the ordinance would be valid. *One 1998 GMC*, 2011 IL 110236, ¶ 20.

¶ 31                                    A. Substantive Due Process

¶ 32      Jackson first claims that section 7-24-225 of the Municipal Code violates a vehicle owner's substantive due process rights because it contains no defense for an innocent owner. We do not find Jackson's argument persuasive and cannot find that the absence of this defense renders the provision of the ordinance unconstitutional.

¶ 33      In the case at bar, Jackson's vehicle was lawfully impounded under section 7-24-225(a) of the Municipal Code, which provides that "[t]he owner of record of any motor vehicle that contains any controlled substance or cannabis *** shall be liable to the city for an administrative penalty ***. *** Any such vehicle shall be subject to seizure and impoundment pursuant to this section." Chicago Municipal Code § 7-24-225(a) (amended Dec. 15, 2004). Although an innocent owner defense is not considered in the ordinance, three exceptions are included: seizure of a vehicle is prohibited if the vehicle is stolen, if the vehicle is operating as a common carrier, or if the owner proves that the presence of a controlled substance or cannabis was authorized. Chicago Municipal Code § 7-24-225 (amended Dec. 15, 2004). Since the ordinance does not also contain an innocent owner defense, Jackson claims the ordinance is unconstitutional.

¶ 34      Generally, "[l]egislation does not violate substantive due process protections if it bears a rational relationship to a legitimate governmental purpose and is neither arbitrary nor discriminatory." *People v. Jaudon*, 307 Ill. App. 3d 427, 436 (1999) (citing *Town of Normal v. Seven Kegs*, 234 Ill. App. 3d 715, 720 (1992)); see also *Napleton*, 229 Ill. 2d at 307. " 'A rational relationship exists if the challenged legislation, to some degree, tends to prevent some offense or evil or to preserve public health, morals, safety and welfare.' " *Jaudon*, 307 Ill. App. 3d at 436 (quoting *Seven Kegs*, 234 Ill. App. 3d at 720). In the case at bar, regulating the possession of controlled substances and cannabis within a vehicle is a legitimate governmental purpose, and section 7-24-225 of the Municipal Code bears a rational relationship to that purpose, since it removes the vehicle used for an illegal purpose from further use for that purpose. See *Jaudon*, 307 Ill. App. 3d at 436 (finding the regulation of firearms possession and transportation was a legitimate governmental interest and an impoundment ordinance did not violate the vehicle owner's substantive due process rights); *Towers v. City of Chicago*, 173 F.3d 619, 627 (7th Cir. 1999) (finding that substantive due process did not prevent a state from imposing a civil penalty on the owner of a vehicle "when the owner allows the vehicle to be used by another for illegal activity").

¶ 35      In support of her claim, Jackson chiefly relies on the case of *City of Miami v. Wellman*, 976 So. 2d 22 (Fla. Dist. Ct. App. 2008), pointing to Florida as an example of a state that has chosen to provide an innocent owner defense in its constitution. In that case, the plaintiffs argued "that governmental entities must show guilty intent on the part of the owner." *City of Miami*, 976 So. 2d at 27 (relying on *Department of Law Enforcement v. Real Property*, 588 So. 2d 957, 968 (Fla. 1991)). The Florida court of appeal held that the ordinances at issue "were void on their face because the ordinances violated the common law prohibition

-9-

against a party judging its own case and because the ordinances violated the Florida Constitution." *City of Miami*, 976 So. 2d at 25. However, despite Jackson's urging that article I, section 2, of the Illinois Constitution should offer the same protection, we do not find Jackson's argument persuasive, since years of federal and state authority support the conclusion that the lack of an innocent owner defense does not render a statute or ordinance unconstitutional.

¶ 36    A number of courts have considered the issue of whether an innocent owner defense is constitutionally required in forfeiture and impoundment statutes. The United States Supreme Court in *Bennis v. Michigan*, 516 U.S. 442 (1996), held that a forfeiture statute was constitutional despite the absence of an innocent owner defense. Similarly, in *Towers*, 173 F.3d 619, the Seventh Circuit upheld the very ordinance at issue here, finding that an innocent owner defense was not constitutionally required. Finally, in an opinion authored by Justice Joseph Gordon, we held in *Jaudon*, 307 Ill. App. 3d 427, that the lack of an innocent owner defense did not render a similar provision of the Municipal Code unconstitutional. The reasoning of these cases is instructive.

¶ 37    In *Bennis*, 516 U.S. 442, the United States Supreme Court found a vehicle forfeiture statute constitutional despite the lack of an innocent owner defense. In that case, a husband was convicted of gross indecency for committing sexual acts in his vehicle with a prostitute. The state sued to impound the vehicle as a public nuisance. *Bennis*, 516 U.S. 442. The vehicle was impounded despite the fact that the wife, who co-owned the vehicle, raised an innocent owner defense, claiming she had no knowledge of her husband's intent to violate Michigan law. *Bennis*, 516 U.S. at 444. Before the case reached the United States Supreme Court, the Michigan Supreme Court held "that, in order to abate an owner's interest in a vehicle, Michigan does not need to prove that the owner knew or agreed that her vehicle would be used in a manner proscribed by [statute]." *Bennis*, 516 U.S. at 445. The Michigan Supreme Court held that knowledge of the illegal activity was irrelevant and, thus, there was no room for an innocent owner defense. However, the Michigan court noted that, before the impoundment statute could be enforced, proof of some form of privity between the owner of the vehicle and the driver was required. *Bennis*, 516 U.S. at 445-46. The United States Supreme Court later affirmed, noting the deterrent effect of ordinances that lacked innocent owner defenses. "This deterrent mechanism is hardly unique to forfeiture. For instance, because Michigan also deters dangerous driving by making a motor vehicle owner liable for the negligent operation of the vehicle by a driver who had the owner's consent to use it, petitioner was also potentially liable for her husband's use of the car in violation of Michigan negligence law." *Bennis*, 516 U.S. at 452 (citing Mich. Comp. Laws § 257.401 (1979)). The United State Supreme Court accordingly held that Michigan's statute did not violate due process rights under the fifth and fourteenth amendments to the United States Constitution.

¶ 38    In deciding *Bennis*, the Supreme Court ruled that a constitutional claim to an innocent owner defense is defeated by "a long and unbroken line of cases" in which the Court has held that "an owner's interest in property may be forfeited by reason of the use to which the property is put even though the owner did not know that it was to be put to such use." *Bennis*, 516 U.S. at 446. See *The Palmyra*, 25 U.S. (12 Wheat.) 1 (1827); *Harmony v. United States*, 43 U.S. (2 How.) 210 (1844); *Dobbins's Distillery v. United States*, 96 U.S. 395 (1877); *Van*

*Oster v. Kansas*, 272 U.S. 465 (1926); *J.W. Goldsmith, Jr.-Grant Co. v. United States*, 254 U.S. 505 (1921); *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663 (1974); *Foucha v. Louisiana*, 504 U.S. 71 (1992); *Austin v. United States*, 509 U.S. 602 (1993). This chain of cases has found impoundment ordinances and forfeiture statutes to be constitutional in the face of substantive due process challenges. Additionally, the State of Illinois has reached similar conclusions and has adopted the reasoning and holding of *Bennis*. See *One 1998 GMC*, 2011 IL 110236; *Jaudon*, 307 Ill. App. 3d 427; *People v. DeLuca*, 302 Ill. App. 3d 454 (1998).

¶ 39    The Seventh Circuit case of *Towers*, 173 F.3d 619, applied *Bennis's* reasoning to its determination of the constitutionality of a City municipal ordinance. In *Towers*, a man in possession of a controlled substance was driving Towers' vehicle. *Towers*, 173 F.3d at 621. Towers had no knowledge of these facts. *Towers*, 173 F.3d at 621. The vehicle was impounded pursuant to the exact same ordinance at issue in the instant case–section 7-24-225. *Towers*, 173 F.3d at 621. Towers raised a violation of due process claim, addressed in this subsection, and an unreasonable seizure claim, addressed later. *Towers*, 173 F.3d at 622-23. Towers' arguments were ultimately rejected because the Seventh Circuit followed the *Bennis* decision, reinforcing the principle that owners are responsible for the consequences that result from lending their vehicles to others. *Towers*, 173 F.3d at 627. The *Towers* court held that substantive due process was not violated by the imposition of civil penalties "on the owner of a vehicle when the owner allows the vehicle to be used by another for illegal activity." *Towers*, 173 F.3d at 627.

¶ 40    A few months after the *Towers* decision, we addressed the same issues in *Jaudon*. In *Jaudon*, plaintiffs claimed that impounding vehicles containing unregistered firearms pursuant to a municipal ordinance violated their substantive due process rights. See *Jaudon*, 307 Ill. App. 3d at 435. The plaintiffs argued that an innocent owner defense was required; however, we disagreed in light of *Bennis* and *Towers*. In relying on the *Towers* decision, we also noted that the ordinance acted as a deterrent mechanism preventing owners from negligently allowing others to borrow their vehicles. *Jaudon*, 307 Ill. App. 3d at 437. We held that states have the power to levy both *in rem* and *in personam* punishments through impound statutes, and explained that "[l]egislation does not violate substantive due process protections if it bears a rational relationship to a legitimate governmental purpose and is neither arbitrary nor discriminatory." *Jaudon*, 307 Ill. App. 3d at 436-37 (citing *Seven Kegs*, 234 Ill. App. 3d at 720). In *Jaudon*, we found regulating the possession of unregistered firearms in a vehicle to be a legitimate governmental purpose. Likewise, here, we find regulating the possession of controlled substances and cannabis within a vehicle to be a legitimate governmental purpose.

¶ 41    In reading the ordinance, Jackson asks us to consider "societal costs" and the fundamental notion that the innocent should not pay when they have done nothing wrong. However, as noted, we have upheld impoundment ordinances without innocent owner defenses because they " 'may still have the desirable effect of inducing [innocent owners] to exercise greater care in transferring possession of their property.' " *Jaudon*, 307 Ill. App. 3d at 436 (quoting *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 688 (1974)). See also *Towers*, 173 F.3d at 624-26. We adopt the reasoning of the decisions of *Bennis*,

*Towers*, *Jaudon*, and the "long and unbroken line of" United States Supreme Court cases (listed *supra* ¶ 38) and find that a lack of an innocent owner defense does not violate substantive due process. *Bennis*, 516 U.S. 442.

¶ 42    As a final note, even if Jackson raised her claim as an as-applied challenge instead of a facial one, the result would remain the same. Under *Jaudon*, the possibility exists that without privity, protection for an innocent owner could be constitutionally required. See *Jaudon*, 307 Ill. App. 3d at 438 (noting that "while innocence may raise a constitutional question, it will not be an operative constitutional deficiency where *** there is direct privity between the owner and the wrongdoer"). However, in the case at bar, Jackson does not give any indication as to her relationship with either of the individuals discovered in her vehicle. Thus, without a showing that there was no privity, we cannot find that the ordinance was unconstitutional as applied to Jackson.

¶ 43                              B. Unreasonable Seizure

¶ 44    Jackson next argues that her right to be free from unreasonable seizures is violated by the City's ordinance because it does not provide for an innocent owner defense. She asks us to find the ordinance unconstitutional because it violates the fourth and fourteenth amendments to the United States Constitution as well as article I, section 6, of the Illinois Constitution.

¶ 45    Citing *People v. Caballes*, 221 Ill. 2d 282 (2006), Jackson recognizes that Illinois courts analyze the state constitution in "limited lockstep" with the federal constitution. See also *Hope Clinic for Women, Ltd. v. Adams*, 2011 IL App (1st) 101463, ¶ 68 (noting that the equal protection, due process, and search and seizure clauses of the Illinois Constitution are "synonymous" with their "federal counterparts"). Our supreme court defined the limited lockstep approach as one in which we will look first to the federal constitution, and only if federal law provides no relief will we determine whether a state departure is warranted based on a specific state criterion. *Caballes*, 221 Ill. 2d at 309-10. Our supreme court provided examples of state criteria, such as a language difference in our constitution, the debates and committee reports of our constitutional convention, our state tradition, and preexisting state law. *Caballes*, 221 Ill. 2d at 310 (citing *People v. Tisler*, 103 Ill. 2d 226, 245 (1984), and *People v. Krueger*, 175 Ill. 2d 60 (1996)). Jackson has not provided us with any reason why the state constitution should be interpreted differently than the federal constitution. Thus, our analysis is essentially identical with regard to both constitutional provisions.

¶ 46    Jackson's argument regarding unreasonable seizure depends on the merits of her first argument claiming a violation of due process. Jackson does not argue that the vehicle was seized in an unreasonable manner; rather, she alludes that, since her due process rights were allegedly violated when she was prevented from raising an innocent owner defense, she therefore suffered from an unjustified and thus unreasonable seizure. However, we found Jackson's due process argument unpersuasive, and consequently, her unreasonable seizure argument must fail as well.

¶ 47    We find the Seventh Circuit's decision in *Towers* to be persuasive because the facts of that case and the arguments proffered by the plaintiffs are very similar to the facts and arguments of this case. As noted, in *Towers*, a vehicle was impounded pursuant to the exact

same ordinance at issue here, section 7-24-225, and Towers raised both a violation of due process claim and an unreasonable seizure claim. *Towers*, 173 F.3d at 621-23. Her arguments were nearly identical to those presented by Jackson; Towers' arguments failed in the district court and in the Seventh Circuit. *Towers*, 173 F.3d at 622-23. Towers argued that the seizure of her vehicle was "per se unreasonable because the seizures were carried out pursuant to municipal ordinances that themselves are violative of [her] constitutional rights." *Towers*, 173 F.3d at 629 n.7. The Seventh Circuit found that the ordinance was not unconstitutional because states have the power to issue civil *in personam* and *in rem* penalties when an owner allows another to use their vehicle for an illegal activity. *Towers*, 173 F.3d at 627. After justifying the ordinance, the Seventh Circuit reaffirmed the *Bennis* decision and identified the legislature's intent in deterring illegal conduct. *Towers*, 173 F.3d at 627.

¶ 48 Like the plaintiff in *Towers*, here, Jackson raised both a due process and an unreasonable seizure claim. Since we earlier found that Jackson has not met her burden of proving why the ordinance is unconstitutional, or what set of circumstances make it unconstitutional, her claim of unreasonable seizure must also fail. Thus, both arguments must fail and the ruling of the trial court is affirmed.

¶ 49                                III. Section 2-14-132(3)

¶ 50 Next, Jackson challenges the constitutionality of section 2-14-132(3) of the Municipal Code. Section 2-14-132(3) provides:

"Except as provided otherwise in this section, a vehicle shall continue to be impounded until (1) the administrative penalty, plus any applicable towing and storage fees, plus all amounts due for outstanding final determinations of parking and/or compliance violations *** [are] paid to the city, in which case possession of the vehicle shall be given to the person who is legally entitled to possess the vehicle; or (2) the vehicle is sold or otherwise disposed of to satisfy a judgment or enforce a lien as provided by law. *Notwithstanding any other provision of this section, whenever a person with a lien of record against a vehicle impounded under this section has commenced foreclosure proceedings, possession of the vehicle shall be given to that person if he or she pays the applicable towing and storage fees and agrees in writing to refund the city the net proceeds of any foreclosure sale, less any amounts necessary to pay all lienholders of record, up to the total amount of penalties imposed under this section.* Notwithstanding any other provision of this section, no vehicle that was seized and impounded pursuant to Section 7-24-225 shall be returned to the record owner unless and until the city has received notice from the appropriate state, or where applicable, federal officials that (i) forfeiture proceedings will not be instituted; or (ii) forfeiture proceedings have concluded and there is a settlement or a court order providing that the vehicle shall be returned to the owner of record." (Emphasis added.) Chicago Municipal Code § 2-14-132(3) (amended Nov. 18, 2009).

¶ 51 Because of the lienholder's ability to repossess the vehicle without an additional hearing and prior to judicial review of the administrative decision, Jackson argues that section 2-14-132(3) of the Municipal Code violates her state and federal constitutional rights. Jackson

argues that this provision is unconstitutional for three reasons: (1) it violates a vehicle owner's procedural due process rights under the state and federal constitutions; (2) it violates the separation of powers provision of the Illinois Constitution; and (3) the release of the vehicle to a lienholder constitutes a taking for private use and thereby violates the vehicle owner's due process rights.

¶ 52                                          A. Procedural Due Process

¶ 53        We first consider Jackson's claims concerning a vehicle owner's procedural due process rights. In the case at bar, Jackson fails to articulate whether she challenges the ordinance's constitutionality on its face or as applied to her circumstances. As in Jackson's challenge to section 7-24-225 of the Municipal Code, here, Jackson also speaks of the rights of a vehicle owner generally, indicating that she is raising a facial challenge. However, Jackson also refers to the facts of her particular situation, which is only relevant in an as-applied challenge. Accordingly, we analyze her claims both ways, beginning with an analysis of the constitutionality of section 2-14-132(3) of the Municipal Code as applied to Jackson's particular circumstances.[3]

¶ 54        Prior to determining whether the ordinance violated Jackson's procedural due process rights by permitting the City to return the vehicle to Mitsubishi without affording Jackson an additional hearing, we first consider whether the City complied with the language of the ordinance. If it did not, then we can dispose of Jackson's claims without reaching the constitutional issue, since our supreme court has "repeatedly stated that cases should be decided on nonconstitutional grounds whenever possible, reaching constitutional issues only as a last resort." *In re E.H.*, 224 Ill. 2d 172, 178 (2006); *People v. Melchor*, 226 Ill. 2d 24, 34 (2007).

¶ 55        The relevant portion of section 2-14-132(3) provides:

"Notwithstanding any other provision of this section, whenever a person with a lien of record against a vehicle impounded under this section has commenced foreclosure proceedings, possession of the vehicle shall be given to that person if he or she pays the applicable towing and storage fees and agrees in writing to refund to the city the net proceeds of any foreclosure sale, less any amounts necessary to pay all lien holders of record, up to the total amount of penalties imposed under this section." Chicago Municipal Code § 2-14-132(3) (amended Nov. 18, 2009).

There is no dispute that Mitsubishi possessed a lien of record against Jackson's vehicle, which was impounded pursuant to section 2-14-132. However, the ordinance does not explain when a lienholder is considered to have "commenced foreclosure proceedings" with respect to the vehicle. This language has not been interpreted in the context of section 2-14-132, nor have we been able to discover any cases discussing vehicle repossession proceedings in such terms. Under section 9-609 of the Uniform Commercial Code–Secured

---

[3]As noted, at oral argument, Jackson's attorney indicated that she was raising a facial challenge. However, since a finding that the ordinance is unconstitutional as applied is dispositive of the facial challenge as well, we begin by considering the as-applied challenge.

Transactions (UCC) (810 ILCS 5/9-609(a)(1), (b)(1), (b)(2) (West 2008)), after default, a secured party "may take possession of the collateral," and may do so "pursuant to judicial process" or "without judicial process, if it proceeds without breach of the peace." Thus, it is possible for repossession of the collateral–the vehicle, in this case–to be done without judicial process, which is the general context for "proceedings." See Black's Law Dictionary 1324 (9th ed. 2009) (listing definitions of "proceeding," including "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment" and "[a]ny procedural means for seeking redress from a tribunal or agency").

¶ 56 In the case at bar, the record reveals that Mitsubishi sent Jackson a letter on January 20, 2010, stating that a portion of her contract states that she "agree[d] not to expose the vehicle to misuse or confiscation." The letter further stated that Jackson materially breached her contract, that Mitsubishi invoked its acceleration clause and terminated the loan agreement, and that Jackson had 10 days to pay the balance due under the loan agreement or else Mitsubishi would "take all necessary measures to recover the vehicle and thereafter sell it pursuant to the terms of [Jackson's] contract." Jackson did not do so and on February 1, 2010, the vehicle was released to Mitsubishi, after Mitsubishi informed the City that due to Jackson's default on the installment purchase contract, it was exercising its right to repossess the vehicle. Thus, there is no dispute that Jackson received notice of the default, notice of the acceleration clause and termination of the agreement, and notice that Mitsubishi would repossess the vehicle if she did not pay the outstanding balance within 10 days. Based on the actions of Jackson, Mitsubishi, and the City, and the fact that Jackson does not claim that Mitsubishi failed to comply with the terms of the ordinance, we find that the facts here sufficiently demonstrate that Mitsubishi had "commenced foreclosure proceedings" when the City released Jackson's vehicle to Mitsubishi. Accordingly, we proceed to our constitutional analysis.

¶ 57 The threshold question in analyzing whether a procedure violates due process is "whether a constitutionally protected liberty or property interest is at stake." *East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 416 (1997) (citing *Tiller v. Klincar*, 138 Ill. 2d 1, 13 (1990)). In the case at bar, Jackson appears to identify the interest at stake as that of a "vehicle owner." However, at the time that the vehicle was turned over to Mitsubishi, Jackson was no longer a vehicle owner and no longer had a property interest in the vehicle.

¶ 58 As noted, after the vehicle was impounded but prior to her administrative hearing, Mitsubishi sent Jackson a letter informing her that she had materially breached her contract, that Mitsubishi invoked its acceleration clause and terminated the loan agreement, and that Jackson had 10 days to pay the balance due under the loan agreement or else Mitsubishi would "take all necessary measures to recover the vehicle and thereafter sell it pursuant to the terms of [Jackson's] contract." Jackson does not dispute that she received notice of her default or that Mitsubishi had the right to repossess the vehicle. On February 1, 2010, the vehicle was released to Mitsubishi after Mitsubishi informed the City that due to Jackson's default on the installment purchase contract, it was exercising its right to repossess the vehicle. "[L]egal title to property subject to a security interest passes to the creditor after he

-15-

has taken possession following default." *Kouba v. East Joliet Bank*, 135 Ill. App. 3d 264, 268 (1985). Thus, when Mitsubishi informed the City that it was exercising its right to repossess the vehicle, legal title to the vehicle passed to Mitsubishi and Jackson no longer possessed a property interest in the vehicle. Accordingly, her constitutional claim must fail.

¶ 59        We also note that if the vehicle was not being held by the City but instead was in Jackson's possession, she would not necessarily have been entitled to a hearing before Mitsubishi repossessed the vehicle. See 810 ILCS 5/9-609(a)(1), (b)(2) (West 2008) (permitting a secured party to "take possession of the collateral" "without judicial process, if it proceeds without breach of the peace"). In essence, then, Jackson is asking for greater protection because the vehicle is currently parked in the City's lot instead of on a public street. We see no reason to impose a hearing requirement simply based on the vehicle's location.

¶ 60        Additionally, adopting Jackson's approach and requiring a hearing before the vehicle could be released to the lienholder would have unintended consequences related to the vehicle owner's other rights. For instance, the vehicle owner would be deprived of his or her constitutional right to a jury trial, since hearings before the Department are held without a jury before the ALJ. See *Aetna Screw Products Co. v. Borg*, 116 Ill. App. 3d 206, 213 (1983). These additional consequences of finding in Jackson's favor strengthen our conclusion that Jackson was not entitled to a hearing before the vehicle was released to Mitsubishi.

¶ 61        Finally, we emphasize that although Jackson was not entitled to a hearing prior to the vehicle's release, she is not without a remedy. Many of Jackson's arguments concerning her due process rights involved claims of fictitious lienholders or issues concerning the actual amount due under the lease. These issues are questions of contract interpretation between two private parties and may be taken up in an appropriate proceeding before a trial court. They do not bear on the constitutionality of the ordinance, which merely permits the City to release the vehicle to the lienholder after receiving sufficient proof of its interest. Accordingly, we find that the ordinance is not unconstitutional as applied to the circumstances present in Jackson's case.

¶ 62        Our determination that the ordinance is constitutional as applied to Jackson is dispositive of her facial claim, as well. Successfully raising a facial challenge to a statute or ordinance "requir[es] a showing that the statute would be invalid under *any* imaginable set of circumstances." (Emphasis in original.) *In re M.T.*, 221 Ill. 2d at 537. " ' "[S]o long as there exists a situation in which a statute could be validly applied, a facial challenge must fail." ' " *In re M.T.*, 221 Ill. 2d at 537 (quoting *Huddleston*, 212 Ill. 2d at 145, quoting *Hill*, 202 Ill. 2d at 157). Where a statute or ordinance is constitutional as applied to a party, a facial challenge will also fail, since there is necessarily at least one circumstance in which the statute or ordinance is constitutional. *Horvath*, 358 Ill. App. 3d at 854; see also *Freed*, 301 Ill. App. 3d at 958.

¶ 63        Additionally, the City argues, and we agree, that once Jackson's as-applied challenge was unsuccessful, she lacked standing to raise a facial challenge to the ordinance. To have standing to challenge the constitutionality of an issue, "a person must have suffered or be in

immediate danger of suffering a direct injury as a result of enforcement of the challenged statute." *People v. Greco*, 204 Ill. 2d 400, 409 (2003) (citing *Messenger v. Edgar*, 157 Ill. 2d 162, 171 (1993)). "A party has standing to challenge the constitutionality of a statute only insofar as it adversely impacts his or her own rights. Generally, if there is no constitutional defect in the application of the statute to a litigant, that person does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations." *People v. Funches*, 212 Ill. 2d 334, 346 (2004) (citing *County Court v. Allen*, 442 U.S. 140, 154-55 (1979)). Here, as noted, the ordinance is not unconstitutional as applied to Jackson and, consequently, the ordinance does not adversely impact her rights. Accordingly, Jackson cannot challenge the ordinance on behalf of "third parties in hypothetical situations" (*Funches*, 212 Ill. 2d at 346) and her facial challenge must fail.

¶ 64                                B. Separation of Powers

¶ 65       Jackson also argues that section 2-14-132(3) violates the separation of powers provision of the Illinois Constitution. However, Jackson fails to grasp the process of impoundment and subsequently turning a vehicle over to a lienholder. Jackson's brief states that "[u]nder section 2-14-132(3), Chicago police determine whether to return an impounded vehicle to lien holders." However, Chicago police do not make the determination of whether to return an impounded vehicle to lienholders. Chicago police have no knowledge as to whether a lien exists on a vehicle, or whether the lienholder is a perfected secured party entitled to repossess the vehicle.

¶ 66       Additionally, despite Jackson's contentions, the City must follow a series of procedural requirements before releasing a vehicle to the lienholder. Once police impound a vehicle, section 2-14-132(2) requires the department of streets and sanitation or other appropriate department to "notify by certified mail the owner of record ***, the person who was found to be in control of the vehicle at the time of the alleged violation, and any lienholder of record, of the owner's right to request a hearing before the department of administrative hearings to challenge whether a violation of this Code for which seizure and impoundment has occurred." Chicago Municipal Code § 2-14-132(2) (amended Nov. 18, 2009). Thus, the ordinance requires notice and a hearing to all relevant parties prior to turning a vehicle over to a perfected, secured lienholder. The City also requires extensive proof from the lienholder to demonstrate its status as a perfected secured party entitled to repossess the vehicle as collateral for the outstanding loan.

¶ 67       Jackson cites *Van Harken* in her argument regarding separation of powers. *Van Harken* states that some overlap between governmental branches is allowed. *Van Harken*, 305 Ill. App. 3d at 978. See also *City of Waukegan v. Pollution Control Board*, 57 Ill. 2d 170, 181-82 (1974). If an administrative agency's proceedings are subject to judicial review, its activities are constitutional. See *Van Harken*, 305 Ill. App. 3d at 978. The City correctly argues that the cases Jackson cites have no application to the City's release of vehicles to lienholders. Jackson fails to identify any agency exercising legislative power, or how the City actually adjudicates disputes between the lienholder and vehicle owner. The lienholder's ability to repossess the vehicle exists for entirely separate, distinguishable reasons. The lien's terms

as stipulated in the loan constitute a binding contract, and the vehicle owner must comport with its terms. If the vehicle owner disputes the lienholder's repossession of the vehicle, he or she is entitled to other judicial remedies in separate legal proceedings.

¶ 68                             C. Takings Clause

¶ 69    Jackson's final argument concerning the constitutionality of section 2-14-132(3) of the Municipal Code is that "the return of the automobile to the lien holder violates Plaintiff's due process rights because it is a taking of private property for private use." It is not clear whether Jackson raises a procedural due process claim or one under the takings clause, nor is it clear whether her claim arises under state or federal law. Jackson's argument on this point is brief, consisting of one paragraph, and her sole citation is to a federal takings case. Thus, we consider her argument as one arising under the takings clause of the federal constitution.

¶ 70    The United States Supreme Court's *Bennis* case is dispositive of the takings issue. After considering the plaintiff's due process claims, which we discussed above (*supra* ¶¶ 37-38), the Supreme Court addressed an argument that a forfeiture statute without an innocent owner defense constituted a taking in violation of the takings clause. *Bennis*, 516 U.S. at 452. The Court rejected that argument, stating that "[t]he government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." *Bennis*, 516 U.S. at 452 (citing *United States v. Fuller*, 409 U.S. 488, 492 (1973)).

¶ 71    Similarly, in the case at bar, the City obtained possession of the vehicle pursuant to an exercise of its police powers, not under the power of eminent domain. Accordingly, the takings clause does not apply.

¶ 72    Additionally, as the City argues, by releasing the vehicle to the lienholder, the City is not transferring ownership of the vehicle from the vehicle owner to the lienholder. Instead, the City is merely releasing possession of the vehicle to a party already legally entitled to the vehicle after receiving proof of such. Therefore, we cannot find that the ordinance is unconstitutional.

¶ 73                          IV. Section 2-14-132(7)

¶ 74    Finally, Jackson argues that section 2-14-132(7) of the Municipal Code is unconstitutional because it violates a vehicle owner's due process right to confront witnesses. Section 2-14-132(7) provides:

    "In a hearing on the propriety of impoundment under Section 7-24-226,[4] any sworn or

---

[4]While Jackson's vehicle was impounded pursuant to section 7-24-225 of the Municipal Code, neither party disputes in its brief that section 2-14-132(7) authorized the use of the forensic scientist's affidavit in lieu of court appearance during the administrative hearing. At oral argument, the City's attorney indicated that this section would not be applicable to an impoundment pursuant to section 7-24-225 of the Municipal Code and stated that the affidavit was admissible pursuant to section 2-14-076(g) of the Municipal Code (Chicago Municipal Code § 2-14-076(g) (amended Apr.

-18-

affirmed report, including a report prepared in compliance with Section 11-501.1 of the Illinois Vehicle Code, that (a) is prepared in the performance of a law enforcement officer's duties and (b) sufficiently describes the circumstances leading to the impoundment, shall be admissible evidence of the vehicle owner's liability under Section 7-24-226 of this Code, and shall support a finding of the vehicle owner's liability under Section 7-24-226, unless rebutted by clear and convincing evidence." Chicago Municipal Code § 2-14-132(7) (amended Nov. 18, 2009).

¶ 75      We note initially that Jackson was permitted to cross-examine Officer Ugarte, who testified to the events leading to the impoundment of Jackson's vehicle during the Department hearing. The only witness whose sworn affidavit was admitted into evidence was the forensic chemist, whose affidavit stated that she had performed an analysis that concluded that the cigar recovered from the vehicle weighed 1.4 grams and contained cannabis, and the bag recovered from the vehicle and substance therein weighed 1.6 grams and contained cannabis. Jackson did not object at the hearing to the use of the sworn affidavit and does not indicate what questions she would have wished to ask the chemist.

¶ 76      Jackson's claim raises a facial challenge to the constitutionality of the ordinance. As noted, to succeed in raising this challenge, Jackson has the burden of proving that no situation exists in which the ordinance would be valid. *One 1998 GMC*, 2011 IL 110236, ¶ 20. An administrative proceeding is governed by the "fundamental principles and requirements of due process of law." *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 92 (1992). "[D]ue process is a flexible concept and requires only such procedural protections as fundamental principles of justice and the particular situation demand." *Abrahamson*, 153 Ill. 2d at 92 (citing *Scott v. Department of Commerce & Community Affairs*, 84 Ill. 2d 42, 51 (1981), and *Telcser v. Holzman*, 31 Ill. 2d 332, 339 (1964)). "A fair hearing before an administrative agency includes the opportunity to be heard, the right to cross-examine adverse witnesses, and impartiality in ruling upon the evidence." *Abrahamson*, 153 Ill. 2d at 95 (citing *Goranson v. Department of Registration & Education*, 92 Ill. App. 3d 496, 501 (1980)).

¶ 77      In the case at bar, Jackson claims that the ordinance is unconstitutional because permitting a sworn report to support a vehicle owner's liability violates the vehicle owner's due process rights to confront adverse witnesses. However, we find that the existence of other provisions of the Municipal Code sufficiently protect a vehicle owner's due process rights by permitting cross-examination of the witnesses whose testimony is presented through a sworn report or affidavit.

¶ 78      The Municipal Code permits an ALJ, on the request of any party or on the officer's own motion, to issue subpoenas to secure the attendance and testimony of relevant witnesses and the production of relevant documents, subject to the restrictions of section 2-14-080 of the Municipal Code. Chicago Municipal Code §§ 2-14-040, 2-14-076(f) (amended Apr. 29,

---

29, 1998)), which states that "[s]ubject to subsection (j) of this section, the administrative law officer may permit witnesses to submit their testimony by affidavit or by telephone." Our analysis is the same in either case.

1998). Section 2-14-080(a) provides:

> "(a) An administrative law officer may issue a subpoena only if he or she determines that the testimony of the witnesses or the documents or items sought by the subpoena are necessary to present evidence that is:
>
> > (i) relevant to the case; and
>
> > (ii) relates to a contested issue in the case." Chicago Municipal Code § 2-14-080(a) (amended Apr. 29, 1998).

Additionally, under section 2-14-076(j) of the Municipal Code, "[u]pon the timely request of any party to the proceeding, any person, who the administrative law officer determines may reasonably be expected to provide testimony which is material and which does not constitute a needless presentation of cumulative evidence, shall be made available for cross-examination prior to a final determination of liability." Chicago Municipal Code § 2-14-076(j) (amended Apr. 29, 1998).

¶ 79      Jackson acknowledges that section 2-14-080 permits the issuance of a subpoena, but argues that since the ALJ's subpoena power is discretionary, "vehicle owners do not have an absolute right to confront [the] witness" whose sworn report is admitted into evidence, rendering both section 2-14-132(7) and "[s]ection 2-14-080 as applied to drug cases" unconstitutional. We do not find this argument persuasive.

¶ 80      As noted, "[a] fair hearing before an administrative agency includes the opportunity to be heard, the right to cross-examine adverse witnesses, and impartiality in ruling upon the evidence." *Abrahamson*, 153 Ill. 2d at 95 (citing *Goranson*, 92 Ill. App. 3d at 501). However, we have held several times that a hearing officer's power to subpoena witnesses sufficiently protects the parties' right to cross-examine adverse witnesses. See, *e.g.*, *Harmon v. Town of Cicero Municipal Officers Electoral Board*, 371 Ill. App. 3d 1111, 1116 (2007); *Dombrowski*, 363 Ill. App. 3d at 426-28; *Van Harken*, 305 Ill. App. 3d at 983; *Sharma v. Zollar*, 265 Ill. App. 3d 1022, 1031-32 (1994); *Van Harken v. City of Chicago*, 103 F.3d 1346, 1352 (7th Cir. 1997).

¶ 81      For instance, in *Van Harken*, we considered whether an ordinance concerning the City's procedures for hearings on parking violations violated the requirements of procedural due process. In part, the ordinance permitted a parking ticket to serve as *prima facie* proof of a violation and did not require the police officer who issued the ticket to appear at the hearing. *Van Harken*, 305 Ill. App. 3d at 974-75 (citing 625 ILCS 5/1-208.3(b)(3) (West 1996), and Chicago Municipal Code § 9-100-080(e), (b) (amended Apr. 29, 1998)). After discussing the Seventh Circuit's *Van Harken* case, in which the Seventh Circuit focused on economic concerns resulting from requiring police officers to attend hearings, we noted that it was "equally significant that the Ordinance expressly provides the hearing officer with the power to 'issue subpoenas to secure the attendance and testimony of witnesses.' " *Van Harken*, 305 Ill. App. 3d at 983 (quoting Chicago Municipal Code § 9-100-080(d) (amended Apr. 29, 1998)). We stated that "[u]nder this provision, the hearing officer may subpoena the police officer who issued the ticket for purposes of cross-examination, if necessary to fairly consider a defense offered by the ticket recipient." *Van Harken*, 305 Ill. App. 3d at 983. Thus, we concluded that the ordinance did not deprive a ticket recipient of due process under

the state constitution. *Van Harken*, 305 Ill. App. 3d at 983. See also *Van Harken*, 103 F.3d at 1352 (finding the ability to subpoena witnesses "provides an adequate safety valve for those cases, if any \*\*\*, in which fair consideration of the respondent's defense would require, as a constitutional imperative, the recognition of a right of confrontation").

¶ 82    Similarly, in the case at bar, several provisions of the ordinance permit a party to request a subpoena to secure the testimony of a witness whose sworn report or affidavit is admitted into evidence. Thus, the right to cross-examine that witness is sufficiently protected and the ordinance does not violate due process.

¶ 83    Additionally, we are not persuaded by Jackson's distinction between the provision permitting the use of sworn testimony and the one authorizing the issuance of subpoenas. The fact that the power to issue subpoenas is discretionary does not render either provision unconstitutional. We find *Sharma*, 265 Ill. App. 3d 1022, a case cited by Jackson, to be instructive. In that case, the plaintiff argued that a regulation promulgated by the Illinois Department of Professional Regulation treated a request for a subpoena differently depending on whether it was the prosecution or the licensee seeking the subpoena. We agreed that the regulation appeared to treat the two differently: "On its face, this regulation does not require a showing of reasonableness and relevancy by the Department prosecutor at the time he requests a subpoena. When the applicant/licensee makes his initial request to the Director for subpoena, he must 'demonstrate that the subpoena is required.' " *Sharma*, 265 Ill. App. 3d at 1031-32. However, we did not agree that the difference resulted in a due process violation. Instead, we noted that the parties were "ultimately subject to the same requirements of relevancy and reasonableness," because when the prosecutor sought enforcement of the subpoena or needed to defend the subpoena request during a hearing on a motion to quash, the prosecutor would be required to show that the subpoena was relevant and reasonable. *Sharma*, 265 Ill. App. 3d at 1032.

¶ 84    Similarly, in the case at bar, we cannot find that any difference between the two provisions of the ordinance results in a due process violation. Section 2-14-132(7) requires a sworn report to be prepared in the performance of a law enforcement officer's duties and to sufficiently describe the circumstances leading to the impoundment before it may serve as admissible evidence. See Chicago Municipal Code § 2-14-132(7) (amended Nov. 18, 2009). Thus, at the very least, the report is subject to a relevancy requirement. Likewise, the provisions of the ordinance relating to issuance of subpoenas make clear that a subpoena will only be issued if it is necessary to present evidence that is relevant and relates to a contested issue in the case. See Chicago Municipal Code §§ 2-14-040, 2-14-076, 2-14-080(a) (amended Apr. 29, 1998). Thus, the "discretion" challenged by Jackson is the ALJ's discretion to determine whether the evidence is relevant and relates to a contested issue, which is the same analysis that the ALJ would undertake prior to admitting a sworn report.

¶ 85    " '[W]ithout a showing to the contrary, State administrators "are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances." [Citations.]' " *Abrahamson*, 153 Ill. 2d at 95 (quoting *Scott*, 84 Ill. 2d at 55, quoting *United States v. Morgan*, 313 U.S. 409, 421 (1941)). If a party contends that an ALJ improperly denied a subpoena request, then the court may consider whether the ALJ abused its discretion in doing so. See *Dombrowski*, 363 Ill. App. 3d at 428.

We note that in the case at bar, Jackson never requested to subpoena the forensic chemist whose sworn report was admitted, nor did she object to its admittance. Thus, we cannot find that her due process rights were violated by the use of the sworn report. See *Harmon*, 371 Ill. App. 3d at 1116 (candidates' due process rights were "sufficiently protected" by the ability to subpoena individuals whose affidavits were relied on and since they did not seek to do so, "[t]he candidates 'cannot be deprived of a right they fail to exercise' " (quoting *Dombrowski*, 363 Ill. App. 3d at 427)).

¶ 86     Finally, we find unpersuasive Jackson's claims that "the ordinance gives vehicle owners no way of discovering who the non-appearing witness is prior to the hearing in the case of a vehicle impoundment involving drugs" and that "a continuance is not fair because it prolongs the deprivation of the owner's vehicle." As the City notes, the ordinance gives the vehicle owner the right to request a preliminary hearing after the vehicle has been impounded, which must be conducted within 48 hours of such a request. Chicago Municipal Code § 2-14-132(1) (amended Nov. 18, 2009). Additionally, a hearing officer may grant a continuance "upon a finding of good cause." Chicago Municipal Code § 2-14-076(d) (amended Apr. 29, 1998). These procedures permit the vehicle owner to discover the witnesses on which the City intends to rely. Moreover, Jackson's concern about prolonging the deprivation of the owner's vehicle is unfounded, since the vehicle owner may choose to obtain the vehicle's release by paying the penalty and fees for towing and storage, which will be refunded if the owner prevails.[5] See Chicago Municipal Code §§ 2-14-132(1), (2), (3) (amended Nov. 18, 2009). Accordingly, we cannot find that section 2-14-132(7) violates due process.

¶ 87                         CONCLUSION

¶ 88     For the foregoing reasons, we find the following: (1) section 7-24-225 of the Municipal Code does not violate a vehicle owner's substantive due process rights, nor is it an unreasonable seizure; (2) section 2-14-132(3) of the Municipal Code does not violate a vehicle owner's procedural due process rights, does not violate the separation of powers provision of the state constitution, and is not an impermissible taking for private use; and (3) sections 2-14-132(7) and 2-14-080 of the Municipal Code do not violate a vehicle owner's due process right to confront witnesses.

¶ 89     Affirmed.

---

[5]We note that when the vehicle is impounded pursuant to section 7-24-225, as in the case at bar, the vehicle may not be immediately released after payment of the penalty and fees, since the City retains possession of the vehicle until state and federal officials inform the City of any proceedings under the applicable state or federal forfeiture law. See Chicago Municipal Code §§ 2-14-132(1), (2), (3) (amended Nov. 18, 2009).